# GIGLIO v. UNITED STATES

No. 70–29. Argued October 12, 1971—Decided February 24, 1972

BURGER, C. J., delivered the opinion of the Court, in which all Members joined except POWELL and REHNQUIST, JJ., who took no part in the consideration or decision of the case.

*James M. La Rossa* argued the cause and filed a brief for petitioner.

*Harry R. Sachse* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Jerome M. Feit,* and *Beatrice Rosenberg.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

Petitioner was convicted of passing forged money orders and sentenced to five years' imprisonment. While appeal was pending in the Court of Appeals, defense counsel discovered new evidence indicating that the Government

had failed to disclose an alleged promise made to its key witness that he would not be prosecuted if he testified for the Government. We granted certiorari to determine whether the evidence not disclosed was such as to require a new trial under the due process criteria of *Napue* v. *Illinois,* 360 U. S. 264 (1959), and *Brady* v. *Maryland,* 373 U. S. 83 (1963).

The controversy in this case centers around the testimony of Robert Taliento, petitioner's alleged coconspirator in the offense and the only witness linking petitioner with the crime. The Government's evidence at trial showed that in June 1966 officials at the Manufacturers Hanover Trust Co. discovered that Taliento, as teller at the bank, had cashed several forged money orders. Upon questioning by FBI agents, he confessed supplying petitioner with one of the bank's customer signature cards used by Giglio to forge $2,300 in money orders; Taliento then processed these money orders through the regular channels of the bank. Taliento related this story to the grand jury and petitioner was indicted; thereafter, he was named as a coconspirator with petitioner but was not indicted.

Trial commenced two years after indictment. Taliento testified, identifying petitioner as the instigator of the scheme. Defense counsel vigorously cross-examined, seeking to discredit his testimony by revealing possible agreements or arrangements for prosecutorial leniency:

> "[Counsel.] Did anybody tell you at any time that if you implicated somebody else in this case that you yourself would not be prosecuted?
>
> "[Taliento.] Nobody told me I wouldn't be prosecuted.
>
> "Q. They told you you might not be prosecuted?
> "A. I believe I still could be prosecuted.
>
> . . . . .

"Q. Were you ever arrested in this case or charged with anything in connection with these money orders that you testified to?

"A. Not at that particular time.

"Q. To this date, have you been charged with any crime?

"A. Not that I know of, unless they are still going to prosecute."

In summation, the Government attorney stated, "[Taliento] received no promises that he would not be indicted."

The issue now before the Court arose on petitioner's motion for new trial based on newly discovered evidence. An affidavit filed by the Government as part of its opposition to a new trial confirms petitioner's claim that a promise was made to Taliento by one assistant, DiPaola,[1] that if he testified before the grand jury and at trial he would not be prosecuted.[2] DiPaola presented the Government's case to the grand jury but did not try the case in the District Court, and Golden, the assistant who took over the case for trial, filed an affidavit stating that DiPaola assured him before the trial that no promises of immunity had been made to Taliento.[3] The United

---

[1] During oral argument in this Court it was stated that DiPaola was on the staff of the United States Attorney when he made the affidavit in 1969 and remained on that staff until recently.

[2] DiPaola's affidavit reads, in part, as follows:

"It was agreed that if ROBERT EDWARD TALIENTO would testify before the Grand Jury as a witness for the Government, . . . he would not be . . . indicted. . . . It was further agreed and understood that he, ROBERT EDWARD TALIENTO, would sign a Waiver of Immunity from prosecution before the Grand Jury, and that if he eventually testified as a witness for the Government at the trial of the defendant, JOHN GIGLIO, he would not be prosecuted."

[3] Golden's affidavit reads, in part, as follows:

"Mr. DiPaola . . . advised that Mr. Taliento had not been granted immunity but that he had not indicted him because Robert Taliento was very young at the time of the alleged occurrence and obviously had been overreached by the defendant Giglio."

States Attorney, Hoey, filed an affidavit stating that he had personally consulted with Taliento and his attorney shortly before trial to emphasize that Taliento would definitely be prosecuted if he did not testify and that if he did testify he would be obliged to rely on the "good judgment and conscience of the Government" as to whether he would be prosecuted.[4]

The District Court did not undertake to resolve the apparent conflict between the two Assistant United States Attorneys, DiPaola and Golden, but proceeded on the theory that even if a promise had been made by DiPaola it was not authorized and its disclosure to the jury would not have affected its verdict. We need not concern ourselves with the differing versions of the events as described by the two assistants in their affidavits. The heart of the matter is that one Assistant United States Attorney—the first one who dealt with Taliento—now states that he promised Taliento that he would not be prosecuted if he cooperated with the Government.

As long ago as *Mooney* v. *Holohan,* 294 U. S. 103, 112 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in *Pyle* v. *Kansas,* 317 U. S. 213 (1942). In *Napue* v. *Illinois,* 360 U. S. 264 (1959), we said, "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.,* at 269. Thereafter *Brady* v. *Maryland,* 373 U. S., at 87, held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution." See Ameri-

---

[4] The Hoey affidavit, standing alone, contains at least an implication that the Government would reward the cooperation of the witness, and hence tends to confirm rather than refute the existence of some understanding for leniency.

can Bar Association, Project on Standards for Criminal Justice, Prosecution Function and the Defense Function § 3.11 (a). When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule. *Napue, supra,* at 269. We do not, however, automatically require a new trial whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . ." *United States* v. *Keogh,* 391 F. 2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under *Brady, supra,* at 87. A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." *Napue, supra,* at 271.

In the circumstances shown by this record, neither DiPaola's authority nor his failure to inform his superiors or his associates is controlling. Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government. See Restatement (Second) of Agency § 272. See also American Bar Association, Project on Standards for Criminal Justice, Discovery and Procedure Before Trial § 2.1 (d). To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it.

Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore

an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.

For these reasons, the due process requirements enunciated in *Napue* and the other cases cited earlier require a new trial, and the judgment of conviction is therefore reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.