**UNITED STATES of America,**

v.

**Henry BYNUM, Jr., Defendant, Appellant.**

**No. 77–1052.**

United States Court of Appeals, First Circuit.

Submitted Sept. 29, 1977.

Decided Jan. 6, 1978.

---

Dennis M. Leary, Boston, Mass., by appointment of the court, for defendant, appellant.

Edward F. Harrington, U. S. Atty., and Robert B. Collings, Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., on brief, for appellee.

Before COFFIN, Chief Judge, TUTTLE, Circuit Judge,* and WOLLENBERG, District Judge.**

PER CURIAM.

Defendant appeals from his bank robbery conviction on the basis of three grounds which he alleges require reversal.

### The Giglio Issue

The opinion in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), describes a pair of propositions that one in appellant's position must establish before obtaining a reversal: (1) that there was a promise of aid made by the government to a key witness that was not disclosed to the jury, and (2) that " 'the false testimony could . . . in any reasonable likelihood have affected the judgment

---

* Of the Fifth Circuit, sitting by designation.

** Of the Northern District of California, sitting by designation.

of the jury . . .'" *Giglio, supra,* at 154, 92 S.Ct. at 766. [citation omitted]. In the present appeal, the normal *Giglio* review has an additional twist, for the government had disclosed the promise to defense counsel well before trial, but neither side used it on cross-examination and thus it was not revealed to the jury. Defendant, represented by a different attorney on appeal, takes the position that the government is required not only to provide such evidence to the defense prior to trial, but also is duty-bound to remind opposing counsel and the court of its existence if the witness creates a misleading impression during his testimony.[1] Because of our resolution of the *Giglio* standards mentioned earlier, we need not reach this issue.

■ We first consider whether the responses of a co-conspirator, Frank Brimmage, were inaccurate or misleading. He had been promised "that any co-operation that . . . [he gave] to the F.B.I. or the United States Attorney's Office would be made known to the court, should . . [he] be charged with a crime in connection with the bank robbery."[2] When first cross-examined by counsel for the co-defendant, Brimmage denied having received any promise of leniency from either the F.B.I. or the United States Attorney.[3] While the witness may have thought a promise of leniency, with its assumption that a trial court would follow recommendations made by the government, was technically different than a promise to tell a court, if subsequently tried and convicted, of a defendant's cooperation, such a distinction would probably be lost on a jury. In such circumstances, Brimmage's answers would have the effect of misleading them into believing that the government had provided no promise to induce Brimmage to testify. *See United States v. Harris,* 498 F.2d 1164, 1169 (3d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974). Moreover, this impression was reinforced by the expansive sweep of the witness' response to the question of leniency, which was a statement that "nothing has been promised". When further cross-examined by appellant's attorney, Brimmage reiterated his earlier denials of receiving any promises, but gave some indication that his testifying in the present trial might help him in the future.[4]

---

1. The question is troublesome. *Compare Giles v. Maryland,* 386 U.S. 66, 82, 87 S.Ct. 793, 17 L.Ed.2d 737 (White, J., concurring, 1967) and *Sanders v. United States,* 541 F.2d 190, 194 (8th Cir. 1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977), *reh'g denied,* 430 U.S. 941, 97 S.Ct. 1573, 51 L.Ed.2d 788 (1977), with *United States v. Harris,* 498 F.2d 1164, 1166–71 (3d Cir.), *cert. denied sub nom., Young v. United States,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974).

2. Letter to both defense counsel from the Assistant United States Attorney, dated June 11, 1976. The trial began on November 15, 1976.

3. "Q. Have you had any discussion with the United States Attorney or any of the F.B.I. agents relative to the possibility of your indictment for this bank robbery?
A. To be truthful, I don't know what's going to happen to me after.
Q. You have had no discussion?
A. I don't know what is going to happen to me after.
Q. Have you had any discussions with the agents or with the United States Attorney relative to what may happen to you?
A. No.
Q. Pardon me?

A. No.
Q. No promises have been made to you?
A. Nothing.
Q. You have no hope of leniency?
A. I just finished telling you nothing has been promised."

4. "Q. You told Mr. Giroux [co-defendant's attorney] you are just here because you want to be here?
A. Who is Mr. Giroux?
Q. The lawyer that spoke to you this morning, this is Mr. Giroux. Do you remember him asking you some questions?
A. Yes.
Q. Do you remember you told him, 'I was not promised anything'?
A. Right.
Q. Testifying here won't hurt you will it?
A. I don't know.
Q. What?
A. I don't know.
Q. In fact, it can only help you, can't it?
A. In a way, it might help me.
Q. Beg your pardon.
A. In a way it might help me.
Q. There is no way it is going to help you?
A. I say, in a way it might.
Q. Oh, excuse me. I am sorry, In a way.

These responses are far less dramatic in their capacity to impeach this potential defendant than cases we have reviewed, where either the promise was of far greater importance to the witness, or his response to the cross-examination questions revealed unqualified deception. Thus, in *Giglio*, the key witness had been promised "that he would not be prosecuted", and he flatly denied this at trial. *Giglio, supra*, at 151–52, 92 S.Ct. at 765. Additionally, in his closing, the prosecutor stated the witness " 'received no promises that he would not be indicted'. " *Giglio, supra*, at 152, 92 S.Ct. at 765. *See also Sanders v. United States, supra*, at 192, 194; *United States v. Harris, supra*, at 1166–67. After reviewing the testimony in the present case, we find it a close question, but hold that it was misleading.

We, therefore, must determine whether, if the promise to Brimmage had been disclosed to the jury, it is likely that the outcome would have been different. We think not. In so deciding, we rely upon two grounds. First, and most importantly, as just pointed out, the promise here is of less value than one of immunity from prosecution. Unlike that situation the defendant here might well be subject to indictment and trial with resulting financial and psychological costs in the present and penal and economic effect in the future. All that the government assured here was an effort to mitigate sentence. Moreover, unlike a promise of immunity, the government's promise here may prove illusory, as a trial court would not be bound to lighten the punishment as a result of the witness' prior cooperation. Finally, the effect of revealing the government's promise is not likely to destroy the credibility of a witness who had already stated that his testimony in this trial "might help him". *See* n. 4.

The other basis for our concluding that the failure to reveal the specific promise to the jury would not be likely to alter the result, is that Brimmage alone did not provide the identification evidence here, the only issue in this case. The bank guard also did, based on his prior selection from photograph spreads. One of the tellers also picked out a photograph on these same occasions. Though she identified the picture in court as being that of Mr. Grayson, a co-defendant, it in fact was appellant Bynum, and the photograph went into evidence. While it was not offered by the government as identification evidence against appellant, a jury would be entitled to rely upon it as corroborating the testimony of both Brimmage and the guard.

### Videotape

Appellant objects on two grounds to the videotape of the robbery having been shown to the jury: (1) that it presents a view which no "individual at the bank could have had of the robbery", and (2) that "the views of the robbers . . . on the video screen are of such poor quality and resolution that they could not possibly aid the jury in making a reasonable identification."

▮▮▮ In regard to the first argument, the government is correct in arguing "the fact that the cameras were on the walls, much higher than the eyes of the witnesses, does not mean that the pictures taken from that view are not true and accurate representations of what would be seen from that

---

Q. In connection with this bank robbery, Mr. Brimmage, you haven't been charged with anything, have you?
A. No.
Q. And you want to tell, leave it with the jury and the Court that you haven't discussed what might happen to you either with the F.B.I. or with Mr. Collings (Assistant U. S. Attorney) or anyone as the result of your testifying here today; is that what you are telling us?
A. I don't know what's going to happen to me.

Q. I am asking: Did you discuss it with the F.B.I.?
A. No.
Q. Never discussed it?
A. No.
Q. Did they ever say anything to you about what might happen to you?
A. You said I might have to come to court after.
Q. And what about Mr. Collings, did you discuss it with him?
A. No."

view." The prosecution provided extensive foundation testimony for the tape. In fact, appellant's counsel did not object to its admission into evidence, only to its being shown to the jury. We agree with those courts which have held that in such circumstances the film "may be admissible as probative evidence in . . . [itself], rather than solely as illustrative evidence to support a · witness's testimony . . ." *United States v. Taylor*, 530 F.2d 639, 642 (5th Cir.), *cert. denied*, 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976). *See also United States v. Gray*, 531 F.2d 933, 935 (8th Cir.), *cert. denied*, 429 U.S. 841, 97 S.Ct. 117, 50 L.Ed.2d 110 (1976). Moreover, portions of the tape's film and sound were verified by an eyewitness, thus providing an alternate ground for its admission. *United States v. Murray*, 523 F.2d 489, 491 (8th Cir. 1975); *Mikus v. United States*, 433 F.2d 719, 725–26 (2d Cir. 1970); *United States v. Hobbs*, 403 F.2d 977, 978–79 (6th Cir. 1968).

As to the contention that the film is so hazy as to be useless to the jury,[5] this is a matter for the trial judge's discretion, and our own viewing convinces us that he did not abuse it.

### Sufficiency of Evidence

Appellant challenges the sufficiency of the evidence, specifically in regard to identifying him as one of the bank robbers. As the government points out, appellant failed to move for acquittal at the close of the government's case, and at the end of his own case. "When this is not done, the appellant must then demonstrate 'clear and gross' injustice . . . or 'manifest injustice' before the conviction is overturned

on that ground. . . . ." *United States v. Kilcullen*, 546 F.2d 435, 441 (1st Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977) [citations omitted]. In fact, not only is there an absence of manifest injustice,[6] but based on the explicit and implicit eyewitness identifications of Frank Brimmage, the bank guard, and the teller, "'a rational juror drawing reasonable inferences . . . from the evidence viewed in the light most favorable to the government . . . could have found guilt beyond a reasonable doubt.'" *Id.* [Citations omitted.]

*The judgment of the district court is affirmed.*

---

5. Appellant's belief that his argument finds support in the case of *United States v. Brown*, 501 F.2d 146 (9th Cir. 1974), *vacated on other grounds, sub nom., United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), is incorrect. There the court held that it would be an invasion of the jury's fact-finding role to admit expert testimony on the question of whether the persons in the bank film were the defendants. *United States v. Green*, 525 F.2d 386, 391 (8th Cir. 1975). The defense in *Brown* wanted to introduce this evidence to rebut the eyewitness identification by a bank

employee and a customer. *Brown, supra*, at 149–50. In the present case, the court was allowing the jury to view the film so that it could perform its fact-finding duty, a ruling perfectly consistent with the *Brown* opinion.

6. We note that the appellant, in a letter dated January 25, 1977, and mailed to the trial judge after sentencing, which roughly approximates a motion for a reduction of sentence, acknowledged his participation in the robbery. This letter was docketed in the district court on January 28, 1977.