UNITED STATES, Appellee,

v.

Private First Class Robert J. FUENTES,
SSN 128–48–0924, United States
Army, Appellant.

No. CM 437786.

U. S. Army Court of Military Review.

Jan. 9, 1980. ·

Captain Peter A. Nolan, JAGC, argued the cause for appellant. With him on the brief ware Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Grifton E. Carden, JAGC.

Captain Michael C. Chapman, JAGC, argued the cause for appellee. With him on the brief were Lieutenant Colonel R. R. Boller; JAGC, Major David McNeill, Jr., JAGC, and Captain Brian X. Bush, JAGC.

Before JONES, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

On the evening of 25 July 1978, the appellant stabbed a fellow soldier (Private Upshaw) in the back four times while the victim lay prone on the floor of a barracks latrine. Appellant was assisted in this assault by Private Cyr. Both were charged with assault with intent to commit murder, a violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Cyr was also charged with an aggravated assault on the victim in violation of Article 128,

UCMJ, 10 U.S.C. § 928.[1] They were tried separately.

We are concerned with whether appellant's conviction of assault with intent to commit voluntary manslaughter can stand in view of the Government's action in presenting as its primary witness the accomplice (Cyr) whose testimony was known to be false in part. We conclude there was prosecutorial misconduct but that appellant was not thereby denied a fair trial.

The Government chose to proceed first with the trial of Cyr. A study of that record is required in the resolution of this case.[2] The primary witness against Cyr was Upshaw, the victim. Upshaw testified that when he came out of one of the stalls in the latrine, he saw Cyr standing near the door holding a mop "at port arms." At that instant, Fuentes came toward him with a knife in his hand. Fuentes demanded that he, Upshaw, pay him $250.00 for a pistol he allegedly had stolen from Fuentes about a year earlier.[3] Fuentes lunged at Upshaw with the knife and a struggle ensued. Upshaw further testified that Cyr hit him in the side and head with the mop handle, pushed him (and Fuentes) to the floor, and then choked him until he passed out. When he came to, he (Upshaw) felt the stab wounds.

Cyr took the stand in his defense and told a different story. He stated that when he entered the latrine Fuentes and Upshaw were fighting. He picked up the mop for his own protection. When it appeared that Upshaw had gained control of the knife and was about to cut Fuentes' throat, he (Cyr) intervened to save Fuentes' life. He poked Upshaw with the mop and pushed the pair to the floor. Cyr also testified that Fuentes regained control of the knife and stabbed Upshaw while the latter lay on the floor. He specifically denied that he choked Upshaw. Cyr stated he got scared, panicked, and ran to his room. Several collateral aspects of Cyr's account of the events were refuted by other witnesses as well as Upshaw.

The Government argued that Cyr and Fuentes planned the attack on Upshaw, cornered him in the latrine, and beat, choked, and finally stabbed him. The trial counsel contended that the evidence supporting Upshaw's version was "logical", "convincing" and "substantial." He characterized Cyr's testimony as "improbable, contradictory, and . . . fabricated . . ." The court-martial with members chose to believe Upshaw. They convicted Cyr as indicated above.

When the same trial counsel three days later embarked on the prosecution of appellant (Fuentes), he used a different approach. He did not call Upshaw, the victim, to testify even though he had informed appellant that Upshaw would be a witness.[4] Instead, he chose to use the immunized Cyr as the primary government witness. Cyr testified substantially as he had at his own trial. Thus the prosecution in its case in chief used as its principal witness to obtain a conviction, one whose testimony it had

---

1. Appellant was convicted of the lesser included offense of assault with intent to commit voluntary manslaughter. He was sentenced to a band-conduct discharge, confinement at hard labor for five-years, and partial forfeitures for five years. Private Cyr was convicted of the lesser included offenses of assault and battery and assault with a dangerous weapon, both under Article 128, Uniform Code of Military Justice. He was sentenced to confinement at hard labor for six months and total forfeitures for six months.

2. We judicially note the record of trial on file in the office of the Clerk of Court in the case of *United States v. Cyr*, CM 437766.

3. Fuentes and Upshaw had been roommates at the time. Upshaw subsequently was reassigned to Korea and had just recently returned to Fort Ord when the assault occurred.

4. We can only speculate as to why trial counsel did not use Upshaw as a witness after he had testified in the successful prosecution of Cyr. One contributing factor may have been Upshaw's reputation as a liar. In both trials, the defense tried unsuccessfully to have Upshaw declared incompetent to testify. As an example of Upshaw's unbelievability, he testified at an Article 32 investigation that he did not defend himself with martial arts, of which he claimed a rating of sixth degree black belt, because he did not have his license with him at the time.

previously characterized as "improbable, contradictory, and . . . fabricated." The prosecution also changed theories from one of a joint effort to one of an individually consummated offense.

 A prosecutor's deliberate deception of a court by the presentation of known false evidence is incompatible with the rudimentary demands of justice and constitutes a corruption of the truth seeking process. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972); *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). The applicability of this principle remains undiminished regardless of whether the Government solicits the false testimony or merely allows it to stand uncorrected when it appears. *Giglio*, 405 U.S. at 153, 92 S.Ct. at 765; *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177. The rule does not lose force because the falsity reflects only upon the credibility the witness. *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177. A conviction procured through the use of testimony known by the Government to be false must be reversed if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. . . ." *Id.* at 271, 79 S.Ct. at 1178.

Appellant's record of trial demonstrates an improper governmental attitude and significant prosecutorial misconduct.[5] Some examples follow:

The trial counsel in his opening statement offered background information pertaining to the victim and suggested a motive for the stabbing. He implied that the victim would testify. Not only did the victim not testify, but the evidence offered by the trial counsel failed to prove his assertions.[6] The trial counsel in calling Cyr failed to inform the court that Cyr was a convicted accomplice of appellant and failed to advise the court that Cyr may testify, in part, falsely.[7] The nature of the questions asked Cyr on direct examination and his responses cre-

5. *a.* Manual for Courts-Martial, United States, 1969 (Revised edition).

44. Trial Counsel.

. . . . .

g. Duties during trial.
(1) . . . Although his primary duty is to prosecute, any act . . . inconsistent with a genuine desire to have the whole truth revealed is prohibited.
*b.* Code of Professional Responsibility.
Disciplinary Rule 7–102.
(A) In his representation of a client, a lawyer shall not:

. . . . .

(4) Knowingly use perjured testimony or false evidence.
*c.* American Bar Association Standards for Criminal Justice.
The Prosecution Function.
5.6 Presentation of Evidence.
(a) It is unprofessional conduct for a prosecutor knowingly to offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses.

6. *a.* Code of Professional Responsibility.
Disciplinary Rule 7–106 Trial Conduct
(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

. . . . .

(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.
*b.* American Bar Association Standards for Criminal Justice.
The Prosecution Function.
5.5 Opening statement.
In his opening statement the prosecutor shall confine his remarks to evidence *he* intends to offer which he believes in good faith will be available and admissible and a brief statement of the issues of the case. It is unprofessional conduct to allude to any evidence unless there is a *good faith and reasonable basis for believing that such evidence will be tendered* and admitted in evidence. (Emphasis added).

7. Although it is possible that the Government could have changed its theory and believed Cyr's account of the stabbing, the approval of Cyr's conviction by the Fort Ord convening authority upon the staff judge advocate's recommendation subsequent to Fuentes' trial conclusively demonstrated that this possibility did not occur. Further, the staff judge advocate's review in Cyr's case failed to discuss the issues noted in the text of our opinion.

ated an impression that Cyr was an innocent witness to the stabbing, a friend of appellant who tried unsuccessfully to break-up the fight between appellant and the victim.[8] The defense counsel's cross examination allowed Cyr to specifically deny any criminal participation in the stabbing.[9] At no time did the trial counsel advise the court of his disbelief of Cyr's testimony, nor did he attempt to correct the false impression left on the members by that testimony.

Cyr's testimony conflicted with that of two other government witnesses, SP4 Morgan and Private Allgood. Both testified that they heard banging and sounds of a scuffle followed by Upshaw's cries for help. Morgan testified further that, very soon after Upshaw's cries, he heard the sound of shuffling feet leaving the barracks. Allgood testified that he waited a short time after hearing the cries, then went down to the latrine where he saw appellant and Cyr coming through the doorway. Allgood further testified that both stopped, told him "everything [was] cool, you didn't see anything", and left the barracks. In contrast, Cyr testified that he heard Upshaw call for help only after the second stab wound was inflicted, that the third and final stab wound was inflicted almost immediately thereafter, and that upon seeing this final wound, he [Cyr] turned in horror and ran from the barracks. Trial counsel's only effort to reconcile this conflict was to suggest in final argument that the

cries heard by Morgan and Allgood were made before Cyr entered the barracks. In Cyr's trial, however, the trial counsel had no such trouble reconciling this conflict. He suggested that the conflict was compelling evidence that Cyr's account of the stabbing was "illogical" and a "fabrication."

In Cyr's trial, Upshaw claimed Cyr choked him until he lost consciousness. The trial counsel used this testimony to explain why Upshaw remained prone while Fuentes stabbed him four times. In appellant's trial the trial counsel again tried to prove Upshaw was not struggling at the time of the stabbing, presumably to establish that Fuentes' actions were excessive, but offered no proof as to the cause of Upshaw's submission.

In the trial counsel's final argument, the credibility of witnesses was cast as a key issue. The trial counsel emphasized Cyr's non-criminal involvement and the credibility of Cyr's testimony, the same testimony which he had labelled previously as fabrication.

■ Finding governmental misconduct, in the cited examples, we turn to the question of the appropriate remedy. Reversal is required, even absent a finding of specific prejudice,[10] unless we find that the misconduct was not material to the issue of appellant's guilt,[11] i. e., there was no reasonable likelihood that Cyr's false testimony and the false impression of his credibility affected the judgment of the court members.

---

8. The extent of the change, in the government's theory is significant. In Cyr's trial, the trial counsel proved that Cyr and Fuentes planned to corner Upshaw and get money for a pistol stolen previously or stab him. The evidence in Cyr's trial proved this plan was carried out with the active participation of Fuentes *and* Cyr. In appellant's trial, the trial counsel proved only that Fuentes intentionally attacked Upshaw, and was content to show that Cyr was *but a horrified bystander, not* an active criminal participant.

9. DC: At any point in time, did you choke Private Upshaw?
 A: No.
 DC: Did PFC Fuentes choke Private Upshaw?
 A: No.

10. *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *United States v. McCord,* 166 U.S.App.D.C. 1, 509 F.2d 334 (D.C.Cir. 1974).

11. For this purpose, our examination of the record was limited to the government's case in chief. *See Giglio v. United States, supra; Annunziato v. Manson,* 566 F.2d 410 (2nd Cir. 1977); *Wilson v. Cannon,* 538 F.2d 1272 (7th Cir. 1976); *United States v. Chisum,* 436 F.2d 645 (9th Cir. 1971). *But see, United States v. Algarin,* 584 F.2d 562 (1st Cir. 1978); *United States v. Anderson,* 574 F.2d 1347 (5th Cir. 1978). *But c. f., United States v. Acosta,* 526 F.2d 670 (5th Cir. 1976).

■ Cyr was the only witness who provided direct evidence of the circumstances surrounding Upshaw's stabbing. His account of the facts cast appellant's involvement in the stabbing in a more favorable light than the account related by Upshaw in Cyr's trial. Although revelation of Cyr's involvement and the falsity of a portion of his testimony [12] may have affected the member's judgment of Cyr's character, the facts introduced thereby would have shown appellant's involvement to be substantially aggravated. We find, therefore, no reasonable likelihood that this revelation would have affected the members' judgment of Cyr's ability to relate truthfully that Fuentes stabbed the prone, unstruggling Upshaw in the back.[13]

■ The appellant's assigned error regarding the legal and factual sufficiency of the evidence has also been considered. The defense of self-defense was raised by the evidence and properly instructed on by the military judge. Although appellant may be correct in arguing that the objective portion of the self-defense test was met, in that reasonable grounds existed to apprehend death or grievous bodily harm and the appellant in fact had such apprehension, he is incorrect in his contention on the second facet or subjective portion of the test. We find, as did the court members, that appellant used excessive force and that he did not in fact believe that such force was necessary to repel the attack.

The findings of guilty and the sentence are affirmed.

LEWIS, J., concurs.

WATKINS, Judge, dissenting:

I respectfully dissent. Accepting the majority's statement of the facts and applying the same law, I reach a different conclusion regarding an appropriate appellate disposition of this case. I am unable to agree with the majority that "there was no reasonable likelihood that Cyr's false testimony and the false impression of his credibility affected the judgment of the court members." I would set aside the findings and sentence and authorize a rehearing. As I understand the law, remedial action of this nature is required under circumstances such as these, not only as a matter affecting the appellant's constitutional right to a fair trial but one intimately related to the standing and integrity of the military judicial process. Cf. Dettinger v. United States, 7 M.J. 216 (C.M.A.1979); United States v. Jackson, 5 M.J. 223 (C.M.A.1978); McPhail v. United States, 1 M.J. 457 (C.M.A.1976); United States v. Woods, 2 U.S.C.M.A. 203, 8 C.M.R. 3 (1953); see generally, United States v. Berger, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934); Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); United States v. Ott, 489 F.2d 872 (7th Cir. 1973).

---

12. It was the trial counsel's duty to correct the falsity of Cyr's testimony when it appeared. The Government may not burden the defense with the responsibility of exposing false testimony, or rely upon the defense counsel's inaction as an excuse for prosecutorial misconduct. Giglio v. United States, supra. See, United States v. Bynum, 567 F.2d 1167 (1st Cir. 1978). C. f., United States v. Agurs, supra; United States v. Phillips, 575 F.2d 1265 (9th Cir. 1978). But see, United States v. Cervantes, 542 F.2d 773 (9th Cir. 1976); United States v. Harris, 498 F.2d 1164 (3rd Cir. 1974).

13. See Authority cited in footnotes 11, 12. Compare, United States v. Algarin, supra; and United States v. McClintic, 570 F.2d 685 (8th Cir. 1978); with United States v. Butler, 567 F.2d 885 (9th Cir. 1978); and Annunziato v. Manson, supra. But c. f. United States v. SanFilippo, 564 F.2d 176 (5th Cir. 1977); United States v. Kessler, 530 F.2d 1246 (5th Cir. 1976).