**UNITED STATES, Appellee,**

v.

**Private (E–2) Roderick O. LOGAN, SSN 374–80–5261, United States Army, Appellant.**

**CM 441043.**

U. S. Army Court of Military Review.

13 April 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Major Robert C. Rhodes, JAGC, and Captain Chuck R. Pardue, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Michael R. Smythers, JAGC, and Captain Gary L. Hoffman, JAGC, were on the pleadings for appellee.

Before CARNE, O'DONNELL and FOREMAN, Appellate Military Judges.

**638**

## OPINION OF THE COURT

FOREMAN, Judge:

The appellant was convicted by a military judge of wrongfully being in an off-limits area, housebreaking, assault with intent to commit rape, and indecent exposure, in violation of Articles 92, 130 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 930, 934. He pled guilty to the first offense and not guilty to the remainder. He was sentenced to a dishonorable discharge, confinement at hard labor for fourteen months, total forfeitures, and reduction to Private E–1.

The appellant's defense at trial was that the victim had consented to sexual intercourse, but they were interrupted by the return of the victim's roommate. He also testified that they had smoked marijuana together in her room before starting to have sex. On the other hand, the victim, Specialist Hills, testified that the appellant had forcibly entered her room and sexually assaulted her. She also denied smoking marijuana with the appellant and testified that she had never smoked marijuana. The victim's roommate, Private First Class Kell, testified during defense cross-examination that Hills smoked marijuana "quite often" and had smoked it in their room on the evening in question.

Concerned with this inconsistency, the trial counsel discussed it with the victim during a recess during the presentation of the defense case. She admitted to him that she had smoked marijuana but not with the appellant. The trial counsel did nothing to rectify her false testimony. In fact, he perpetuated the false testimony by asking Private Corbett, another roommate, on cross-examination after he knew of the falsehood, whether she had ever seen the victim use marijuana. The answer was "no."

During argument on findings, the defense highlighted the inconsistency regarding the victim's marijuana use by stating:

Their entire case rests upon the testimony of Specialist Hills. Specialist Hills has come before the court and given testimony that in many ways is questionable. It appears that she has committed perjury on the witness stand as to smoking marihuana. She was asked whether she smoked marihuana and she says no. According to the testimony of PFC Kell, who appears to be quite a creditable [sic] witness, she smoked marihuana just about right after it happened.

The trial counsel argued in support of the testimony of the victim on the point:

The evidence—the defense has said that Specialist Hills may have committed perjury. The government maintains that it's logical for a person even under oath not to incriminate themself when they're not warned of their rights. *However, you also have the testimony of Private Corbett who says that she's her roommate [and] she's never noticed Specialist Hills indulge in any type of marihuana.* Even if Private Corbett saw her with marihuana after the incident, that would explain maybe why she was calm after the incident. (Emphasis added.)

It was not until the military judge had closed the court for deliberation that the trial counsel informed the defense counsel of Specialist Hills' false testimony. Neither counsel brought it to the attention of the military judge.

■ The use of perjured testimony to obtain a conviction is not tolerated by civilian or military courts. "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (Footnotes omitted). *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The rule is the same regardless of whether the falsity was known by the government or, although not solicited by the prosecution, it "allows it to go uncorrected when it appears." *Napue, supra* at 269, 79 S.Ct. at 1177. It is also immaterial

that the false testimony affects only the credibility of the witness. *Id.; United States v. Fuentes,* 8 M.J. 830, 832 (ACMR), *pet. granted,* 9 M.J. 36 (CMA 1980). *See* ABA Standards for Criminal Justice, The Prosecution Function, § 5.6(a).

■■■ We find that the misrepresentation was material. The case was closely contested; the testimony of the two crucial witnesses—the appellant and the victim—was in direct conflict. Thus, the credibility of each became the key in resolving the issue of guilt or innocence. While the falsity of the victim's testimony did not relate to the issue of consent, it did relate to her credibility, on which this case turned. It is clear that both counsel considered the issue of the victim's marijuana use to be important. Several witnesses testified concerning it and the conflicting evidence was commented on in argument by both counsel. The defense argued that the victim, having lied about her marihuana use, also had lied about her sexual activity with the appellant. While it is possible that the trier of fact ignored the conflicting evidence in resolving the issue of credibility, we find that there was a reasonable likelihood that the false testimony affected the decision of the military judge.

An accused is entitled, as a matter of due process, to present his case to a trier of fact "that is not laboring under a Government-sanctioned false impression of material evidence. . . ." *United States v. Barham,* 595 F.2d 231, 242 (5th Cir. 1979). Reversal is required if the false testimony could in any reasonable likelihood have affected the judgment of the trier of fact. *United States v. Agurs, supra; Giglio v. United States, supra; Napue v. Illinois; United States v. Barham, supra.*

The defense counsel was eventually given notice of the perjury, but declined to bring it to the attention of the military judge in a timely manner. Waiver may be applied where the defense, having notice of the false testimony, was deliberately inactive and took none of the obvious corrective measures. *United States v. Harris,* 498 F.2d 1164, 1170–71 (3d Cir.), *cert. denied,*

*sub nom. Young,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974). *See also United States v. Decker,* 543 F.2d 1102 (5th Cir. 1976). The only action taken on the information by the defense counsel in appellant's case was a post-trial petition for rehearing addressed to the convening authority, which was denied. We need not decide whether the trial counsel's disclosure to the defense counsel was an adequate remedy, since in this case the trial counsel did more than allow the false testimony go uncorrected when it appeared; he affirmatively perpetuated the falsehood by the questioning of Private Corbett and by referring to Corbett's testimony on this issue in his closing argument. In view of the trial counsel's knowing exploitation of false testimony, the application of waiver would be detrimental to the integrity, fairness and public reputation of the judicial system. *See United States v. Barham, supra,* at p. 243, n.17; *United States v. Fuentes, supra.*

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge CARNE concurs.

O'DONNELL, Judge, concurring in the result:

Although I agree that the conviction should be set aside, I reach that conclusion by a slightly different route from that of the majority.

The basic principle, as noted by the majority, is that the Government may not use false testimony to obtain a conviction or permit false testimony to go uncorrected. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Not every use of tainted testimony, however, requires reversal. The test as enunciated by the Supreme Court is whether "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96

S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (Footnotes omitted). My difficulty is concluding that the false testimony in this case could have affected the outcome.

In addressing this issue, it is necessary to consider the context in which the false testimony arose. The appellant contended at trial that the victim consented to his advances and in support of this testified that he and the victim smoked marihuana before the sexual activity began. During her cross-examination, the victim denied smoking marihuana with the appellant. Also, in response to questions from the defense counsel, she stated that she did not smoke marihuana at all and specifically denied smoking marihuana in her room. The Government also called Private First Class Judy Kell, the victim's roommate. On cross-examination, she testified that the victim often smoked marihuana in the room and that she smoked a marihuana cigarette in the room shortly after the appellant departed on the evening in question.

After the Government rested, the trial counsel questioned the victim privately about her use of marihuana. At this time, she admitted that she used marihuana and had smoked a marihuana cigarette after the incident. However, she denied smoking with the appellant at any time.[1] The prosecutor did not inform the judge at all nor did he inform the defense of this information until the judge had retired to deliberate on the findings. Moreover, the trial counsel during cross-examination of another defense witness, also a roommate of the victim, asked whether she had ever seen the victim use marihuana. He received a negative reply.

The question of marihuana-smoking was relevant initially to the extent it tended to show that the sexual activity was volun-

tary. The false testimony, however, related only to marihuana smoking in general and in her room. The victim never recanted her testimony that she had never smoked with the appellant. The false testimony, therefore, had no direct application to the question of whether the victim consented to the sexual acts. For this reason, I do not believe that this testimony had any bearing on the conviction.[2] Accordingly, if this were the only matter before us, I would not be inclined to set aside the conviction. However, as the majority points out, the trial counsel exploited the false testimony by soliciting misleading information during subsequent cross-examination and by engaging in misleading argument during final argument on the merits. This raises considerations of professional responsibility which I trust will be reviewed by appropriate authorities.

In my view, this Court has a supervisory responsibility for the administration of justice in the court-martial system and should be able to set aside a conviction in an appropriate case even though there may be no prejudice to the accused in the strict sense. As the Ninth Circuit stated in an analogous situation:

> [E]ven though we could not be persuaded that the defendant had been seriously prejudiced, if the prosecutorial conduct was [censurable] we might reverse a conviction in the interest of keeping the administration of justice beyond the "suspicion of reproach," or, perhaps, as a prophylactic against willful prosecutorial misconduct.

*United States v. Gerard,* 491 F.2d 1300, 1302–03 (9th Cir. 1974) (citations omitted).

As I believe this is an appropriate case for invoking such a rule, I join with the majority in setting aside the conviction.

---

1. This information is contained in an affidavit of the trial counsel filed with the Court.

2. The question of marihuana-use was also relevant to the victim's credibility since it related to the commission of a felony. Military Rule of Evidence 608(b). Even here, I do not believe, considering the prevalence of marihuana-use in general and in the military in particular, that an admission by the victim that she had previous-

ly smoked marihuana and smoked it after the incident would have impeached her credibility sufficiently to affect the outcome of the case. Indeed, evidence that she smoked it after the incident could well have supported her testimony that she had been sexually attacked on the rationale that she smoked it because she was emotionally distraught.