JUSTICE RICE
dissenting.
¶14 I agree entirely with Gratzer’s arguments, summarized in ¶ 12 of the Court’s opinion, and for those and the additional reasons set forth herein, I would reverse and remand for a new trial.
¶15 The Court notes that we adopted a three-part test in Gollehon to determine the effect of knowingly false testimony on a defendant’s due process rights. We did so in Gollehon without explanation, but by simple citation to the source of the test, Fuller v. Johnson (5th Cir. 1997), 114 F.3d 491.
¶16 Fuller’s formulation of the test was premised upon the principles enunciated by the United States Supreme Court in Giglio v. United States (1972), 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104. Fuller, 114 F.3d at 496. In Giglio, the prosecution promised a witness in a criminal forgery case that if he testified, he would not be prosecuted. During the trial, defense counsel asked the witness on cross-examination if any promises of leniency had been made, and the witness falsely answered no, which the prosecution did not correct. The Court discussed how false testimony would be treated:
[T]his Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with “rudimentary demands of justice.”... When the “reliability of a given witness may well be determinative of guilt or innocence,” nondisclosure of evidence affecting credibility falls within [the] general rule [requiring a new trial]. Napue, supra, at 269. We do not, however, automatically require a new trial whenever “a combing of the prosecutors’ files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict....” United States v. Keogh, 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under Brady [a. Maryland], supra, at 87. A new trial is required if “the false testimony could ... in any reasonable likelihood have affected the judgment of the jury ....” Napue, supra, at 271.
Giglio, 405 U.S. at 153-54, 92 S.Ct. at 766, 31 L.Ed.2d at 108. The Court concluded that the false testimony was material and reversed *342 and remanded for a new trial. Giglio, 405 U.S. at 155, 92 S.Ct. at 766, 31 L.Ed.2d at 109.
¶17 Here, the arresting officer offered false testimony during cross-examination to the effect that he had owned a car like Gratzer’s which could be operated without a key:
Q: But as you testified before, you did not see him toss anything or get rid of anything, at any rate?
A: Correct.
Q: If he didn’t have the keys on his person, then, in fact, he did not have the ability to control that vehicle or to drive that vehicle; isn’t that correct?
A: I wouldn’t know.
Q: Don’t you need to have a key in order to operate that vehicle?
A: I’ve owned a Chevy Caprice that did not require a key. And I’ve owned one other car that did not require a key, so-
The clear implication of the officer’s testimony was that Gratzer’s vehicle, being a Chevy Caprice, could also be operated without a key. However, the officer’s testimony was not accurate.
¶18 The Court attempts to minimize the officer’s inaccurate testimony by asserting that the officer’s ownership of the Caprice, though admittedly falsely stated, was irrelevant and immaterial to the conviction, and that there is “nothing in the record” which would suggest that the officer’s testimony about a Chevy Caprice starting without a key was false. While I agree that the false testimony regarding the officer’s ownership is irrelevant and immaterial to the conviction, I disagree that there is nothing in the record suggesting the officer’s testimony was false regarding operation without a key. To the contrary, the testimony at the postconviction hearing by Officer Hintz, the patrol supervisor, clearly demonstrated that a key was initially required in order to operate the Caprice referenced by the officer in his trial testimony, directly contradicting the officer’s trial statement that “I’ve owned a Chevy Caprice that did not require a key.” Under cross-examination, Hintz testified:
Q: Well, let’s just assume that the car has been properly turned off, like any human being would probably turn the car off and put it in a locked position and pull the key, would you make that assumption?
A: If you want to make that assumption.
Q: Okay. What you’re testifying to is then under those circumstances, that car is not going anywhere unless you put a key in the ignition and click it once, correct?
*343 A: Correct.
Thus, the officer’s trial testimony that he had operated a Caprice “that did not require a key” was inaccurate and distinctly misleading.
¶19 This false testimony went directly to the issue of Gratzer’s actual physical control of the vehicle, an element of the crime. The officer was unable to locate the vehicle’s key on Gratzer or elsewhere at the scene, but the false testimony eliminated the significance of this evidence, and thus, tended to undermine Gratzer’s defense that he had not controlled the vehicle. The testimony also tended to undermine Church’s testimony that he (Church) had driven the vehicle, and then departed from the scene. Church testified that he parked the vehicle and departed in a hurried manner to distance himself from Gratzer, who was becoming irritable. He further testified that, although he had no recollection of what he did with the key when he departed, “I have a habit of taking keys accidentally... I take the key with me .... Its just a habit I have.” Thus, the officer’s inability to locate a key was arguably consistent with Church’s version of the events, hut the false testimony undermined Gratzer’s opportunity to take advantage of the evidence and make such an argument. If a key was not needed to operate the vehicle, then the whereabouts of the key became a useless consideration.
¶20 Further, in an apparent effort to counter the defense, the State incorporated Church’s testimony into its theory. In closing argument, the prosecutor argued that Church had, in fact, driven the vehicle, parked it, and departed on foot, but that Gratzer had proceeded to drive the vehicle thereafter. If the jury had chosen to believe that Church had taken the key, the State’s theory would have been nullified-except for the false testimony that the vehicle could be operated without a key. The falsehood thus deprived the defense from the opportunity to counter the State’s theory, and the jury of an opportunity to consider it.
¶21 The Court dismisses these effects on the trial by concluding that the false testimony was not material because the same officer who testified falsely also provided testimony of other observations he had made of Gratzer’s control of the vehicle. I disagree.
¶22 The effects of the false testimony on this trial were not eliminated by the officer’s additional observations. In Napue v. Illinois (1959), 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, the United States Supreme Court considered the effect of false testimony where, similar to the facts in Giglio, which relied upon Napue, a witness falsely testified that he had received no promises in exchange for his testimony. *344 However, the jury was informed through other testimony that the witness’s public defender “was going to do what he could” to aid the witness and “was trying to get something” for.him. Napue, 360 U.S. at 268, 79 S.Ct. at 1176, 3 L.Ed.2d at 1220. However, this additional evidence did not alleviate the Court’s concern over the witness’s false testimony:
[W]e do not believe that the fact that the jury was apprised of other grounds for believing that the witness ... may have had an interest in testifying against petitioner turned what was otherwise a tainted trial into a fair one. ... Had the jury been apprised of the true facts, however, it might well have concluded that [the witness] had fabricated testimony in order to curry ... favor ....
Napue, 360 U.S. at 270, 79 S.Ct. at 1177, 3 L.Ed.2d at 1221.
¶23 Likewise, the officer’s other testimony that Gratzer had exerted control over the vehicle did not remove the taint of his false testimony from the trial. As in Napue, it is entirely possible that the jury here, but for the false testimony, may have concluded the absence of a key meant that Church had walked away with it, and that Gratzer had not exerted control over the vehicle.
¶24 A new trial is required if false testimony could “in any reasonable likelihood have affected the judgment of the jury.” Giglio, 405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 108 (emphasis added). Further, the prosecutor’s lack of involvement in procuring the false testimony does not remove the taint, as a new trial is required “irrespective of the good faith or bad faith of the prosecution.” Giglio, 405 U.S. at 153, 92 S.Ct. at 766, 31 L.Ed.2d at 108. I would conclude that because Gratzer was deprived of legitimate factual and legal arguments regarding control of the vehicle, an element of this crime, the false testimony was material to the verdict and reasonably likely to have affected the jury’s judgment.
¶25 Further, the officer was the State’s only witness who identified Gratzer as being in control of the vehicle. His reliability and credibility were critical to Gratzer’s conviction. Due process requires us to ensure that the entirety of his testimony was the truth.
¶26 I would reverse and remand for a new trial, and I dissent from the Court’s decision.
JUSTICE COTTER and JUSTICE WARNER join in the dissenting opinion of JUSTICE RICE.