# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class JARRYN C. THOMPSON**
**United States Army, Appellant**

ARMY 20170150

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Charles C. Poché, Staff Judge Advocate

For Appellant: Captain Augustus Turner, JA (argued); Captain Augustus Turner, JA; Dave Carothers, Esquire (on brief and reply brief).

For Appellee: Captain Sandra L. Ahinga, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Captain Sandra L. Ahinga, JA (on brief).

19 December 2018

--------------------------------
SUMMARY DISPOSITION
--------------------------------

Per Curiam:

Appellant challenges his conviction for sexual abuse of a child under the age of twelve,[1] asserting the trial counsel committed prosecutorial misconduct when the government used perjured testimony that affected the judgement of the panel.[2] We disagree and affirm appellant's conviction and sentence.

---

[1] An enlisted panel sitting as a general court-martial convicted appellant of one specification of sexual abuse of a child under the age of twelve, in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. § 920b [UCMJ]. The court-martial sentenced appellant to a dishonorable discharge and to be confined for six months. The convening authority approved the adjudged sentence.

[2] Appellant also asserts as an assignment of error that the military judge erred when he admitted into evidence prior consistent statements by the victim under Military Rule of Evidence [Mil. R. Evid.] 801(d)(1)(B), which materially prejudiced the

(continued . . .)

## BACKGROUND

Appellant was friends with MA's stepfather. After attending a party, appellant and MA's stepfather returned to MA's house around 2300. Appellant went to sleep in the spare bedroom. Shortly afterward, appellant entered MA's bedroom and got into bed with her. At the time, MA was eight years old. Appellant pulled down her pajama pants and underwear and rubbed her buttocks with his hands. MA told him to "stop." Appellant got off MA's bed and left her bedroom.

Appellant asserts AA, MA's mother, gave perjured testimony at appellant's court-martial. Essentially, AA testified on direct that she saw appellant walking past her bedroom down the hallway toward the living room, fully dressed, but without shoes. MA's stepfather spoke to appellant and escorted him back to the spare bedroom. AA then received a text message from her daughter's iPad which stated, "Momy [ . . ] [s]omwon [sic] was in my room." AA testified that at that point MA's stepfather "kicked him [appellant] out [of the house]."

On re-direct, AA testified that when appellant was kicked out of the house, she saw "[appellant go] into my daughter's room to get his belongings and he left." During re-cross, defense asked AA whether she had ever previously stated that she saw appellant in MA's bedroom. AA stated she told the prosecutors that she saw appellant in MA's bedroom. During a recess, defense and government counsel entered into the following stipulation of fact:

1. On March 6, 2017, during re-direct examination of [AA], she testified that she saw the accused exit the bedroom of [MA] on November 5, 2015.

2. During re-cross examination of [AA], she was asked whom she told about this allegation before saying it in court during re-direct examination. [AA] testified that she told each of the three prosecutors in this case about the allegation each time she met with them.

3. That did not happen.

---

(. . . continued)
substantial rights of appellant. We find this assigned error does not merit discussion or relief.

Appellant personally raised matters pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). After due consideration, we find that appellant's *Grostefon* matters do not warrant discussion or relief.

During closing argument, defense counsel argued that AA lied about seeing appellant in MA's bedroom, which prompted a discussion by some of the members. The military judge interrupted the defense counsel's argument and stated, "Members, let's hold your discussion about this case until you are in closed session deliberations. There should be no discussion amongst you now." One of the panel members stated he had a question for MA's stepfather. The military judge addressed the question after both sides presented closing arguments. The member asked whether MA's stepfather saw appellant getting his shoes and hat from MA's bedroom. MA's stepfather was recalled as a witness and testified that he did not see appellant go into MA's bedroom to get his shoes and hat.

During panel deliberations, AA's testimony was replayed for the panel at their request. AA testified again during presentencing proceedings as a government witness to describe the impact appellant's actions had on MA.

## LAW AND DISCUSSION

Appellant claims that AA perjured herself when she testified that she personally observed appellant in MA's bedroom and that she told the prosecutors the same. Appellant further claims that the trial counsel knew AA perjured herself, did nothing to correct the falsehood, and it is reasonably likely that the perjured testimony affected panel deliberations. We disagree with all of appellant's aforementioned assertions.

"The knowing use of perjured testimony involves prosecutorial misconduct and, more importantly, involves 'a corruption of the truth-seeking function of the trial process.'" *United States v. Thomas*, 22 M.J. 388, 392 (C.M.A. 1986) (quoting *United States v. Bagley*, 473 U.S. 667, 680 (1985). Questions of prosecutorial misconduct are reviewed de novo. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017). "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). "The rule is the same regardless of whether the falsity was known by the government or, although not solicited by the prosecution, it 'allows it to go uncorrected when it appears.'" *United States v. Logan*, 14 M.J. 637, 638 (C.M.R. 1982) (quoting *Napue v. Illinois*, 360 U.S. 264 (1959)).

### 1. Knowing Use of Perjured Testimony

As an initial matter, we are not convinced that AA perjured herself. Other than speculation, nothing in the record proves that AA did not see appellant come out of MA's bedroom. Furthermore, even were we to assume this testimony was false, nothing in the record suggests that the trial counsel knew it was false. At worst, AA's testimony on re-direct was inconsistent with her earlier direct testimony

and statements to prosecutors. This is a common occurrence at trial and fair grounds for impeachment by opposing counsel.

This case is distinguishable from the cases appellant relies upon in his brief, which concern prosecutors who knowingly elicit false testimony. In *Logan*, the victim told the trial counsel during a recess that she lied on direct examination about whether she had smoked marijuana before. 14 M.J. at 638. Not only did the trial counsel not disclose the falsehood to defense counsel, the trial counsel perpetuated the falsehood by calling another witness to testify that he had not seen the victim smoke marijuana, and then argued the testimony in closing. *Id*. at 638-39.

A similar knowing misrepresentation by prosecutors is found in *Agurs*; *Giglio v. United States*, 405 U.S. 150 (1972); *Napue*; and *United States v. Fuentes*, 8 M.J. 830 (A.C.M.R. 1980). In *Agurs*, the prosecutor knowingly did not disclose to defense counsel a victim's past criminal record, which would have supported the accused's argument that he acted in self-defense. 427 U.S. at 100-01. In *Giglio*, the accused's co-conspirator, a government witness and the crux of the government's case, testified on cross-examination that the government had not made him any promises of leniency, which was false. 405 U.S. at 151-52. Similar circumstances occurred in *Napue* where the principal government witness falsely testified that he did not receive any promises from the government in return for his testimony. 360 U.S. at 265. Finally, in *Fuentes*, the trial counsel elicited testimony from the accused's accomplice, which the trial counsel had argued was false three days prior at the accomplice's trial. 8 M.J. at 833.

In strong contrast to the aforementioned cases, nothing in the record suggests the prosecutors in this case knew that AA would testify that she saw appellant in MA's bedroom; nor could they know whether such testimony was false. Unlike in *Agurs*, *Giglio*, *Napue*, and *Fuentes*, the trial counsel in this case did not have exculpatory evidence pretrial that should have been disclosed to defense counsel. *See Brady v. Maryland*, 373 U.S. 83 (1963). Rather, the record suggests that trial counsel learned about AA's inconsistent statement at the same time defense counsel learned of it, during re-direct examination. In fact, it appears that trial counsel was not expecting AA's response that she saw appellant in MA's bedroom. Trial counsel unintentionally elicited the statement by asking AA a broad question, "what happened next [after MA's stepfather kicked appellant out]?" In response, AA provided new testimony that she saw appellant gather his belongings from MA's bedroom. Even defense counsel conceded in closing argument that, "There wasn't even a question that was asked. [AA] blurted that out." Accordingly, we find trial counsel did not knowingly elicit false testimony.

4

### 2. *Correcting the Falsity*

In any event, to the extent that AA falsely claimed that she had previously disclosed to the trial counsel that she had seen appellant leave MA's room, we find the government took appropriate steps to correct the falsity. In stark contrast to *Logan*, *Agurs*, *Giglio*, *Napue*, and *Fuentes*, trial counsel in this case did not perpetuate or exploit AA's allegedly false testimony.

Immediately after AA testified that she told the trial counsel that she saw appellant in MA's bedroom, the military judge recessed the court and held a Rule for Courts-Martial [R.C.M.] 802 session. Thereafter, the defense and trial counsel entered into a stipulation of fact addressing AA's inconsistent testimony and potentially false claim of what she told the trial counsel. We agree with appellant that the stipulation of fact could be interpreted ambiguously because we do not know what "that" refers to in the third paragraph which states, "That did not happen."[3] However, this stipulation of fact appears to have been appellant's remedy of choice.[4] Indeed, agreeing to a poorly written stipulation was a reasonable trial strategy for defense because it allowed the defense to argue the ambiguity and undermine AA's credibility.

In closing argument, the trial counsel never mentioned that AA testified that she saw appellant in MA's bedroom. The trial counsel even acknowledged that AA had some credibility issues when he argued in rebuttal, "AA, she had some trouble with certain parts of her testimony. But what was clear were the basic outline of the facts that had happened. [Appellant] was at her house. That he was kicked out of her house later that night."

The defense counsel exploited AA's inconsistent testimony in closing by specifically referencing the stipulation of fact. Defense counsel argued extensively that AA had no credibility and urged the panel to "disregard everything that she says." This may have been an effective argument for defense counsel because this is when the panel member discussion occurred, which lead to MA's stepfather being recalled. MA's stepfather's additional testimony contradicted AA's testimony about

---

[3] We conclude that the stipulation of fact was limited to an agreement between appellant and the government that AA had not previously told the trial counsel that she saw appellant leave MA's bedroom.

[4] We note that a stipulation of fact is just one of several possible remedies for potentially false testimony. Other remedies could have included recalling AA as a witness, a stipulation of expected testimony from the trial counsel, testimony from the three prosecutors, or a defense motion for a mistrial. *See, e.g.*, *Logan*, 14 M.J. at 639 ("Waiver may be applied where the defense having notice of the false testimony, was deliberately inactive and took none of the obvious corrective measures").

seeing appellant in MA's bedroom. Accordingly, to the extent that AA's testimony was false and needed to be corrected, we find that it was corrected by a stipulation of fact, agreed to by defense counsel, and embraced by defense counsel during closing argument.

### 3. Material Prejudice

Furthermore, appellant was not materially prejudiced by the introduction of any potentially false testimony. Unlike in *Logan*, this was not a closely contested case. The evidence that appellant was in MA's room was overwhelming, notwithstanding AA's testimony.

First, MA's testimony was compelling. Second, her testimony was corroborated by a contemporaneous text message she sent to AA. Third, appellant's own statements in a group text message exchange the following day places him in the room. When appellant is asked by a friend, "[] why the [] am I hearing you went into [AA's] daughter's room and slept in her bed with her in there!!!!" Appellant replied with a curt, "Idk." When further confronted by his friends to explain more, appellant texted, "Idk remember what happened everything last [sic] I might I remember leaving [MA's stepfather's] house [because] he said I had to go and I walked out and just kept walking." The friends in the text exchange were outraged by this response, to which appellant texted, "I know I do I have to answer for this I feel so low and horrible idk where to start." In the very least, appellant's statements in the text messages establish his consciousness of guilt and corroborate the other government witness testimony that appellant was in MA's room and, as a result, he was kicked out of the house following an incident in MA's bedroom. *See* Mil. R. Evid. 304(c)(1) analysis at A22-11 (failure to utter denial under circumstances that would reasonably call for denial can constitute an admission by silence).

## CONCLUSION

The findings and sentence are AFFIRMED.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

6