COLEMAN III, Judge.
Keith M. Taylor was convicted in a bench trial of attempted malicious wounding, shooting at an occupied dwelling, and using a firearm in the commission of a felony. Taylor contends the Commonwealth committed a Brady violation that *431 deprived him of a fair trial. He argues that the undisclosed investigatory notes of the two detectives who interviewed witnesses at the crime scene contained accounts that were exculpatory and inconsistent with the witnesses’ trial testimony. Specifically, he claims that several of the witnesses’ accounts did not mention that Taylor was “out there shooting at the scene of the crime” and that the failure to mention Taylor as one of the shooters was inconsistent with their testimony. The trial court ruled that the investigatory accounts contained in the detectives’ notes were not inconsistent with the witnesses’ trial testimony arid, therefore, the trial court denied the motion for a new trial. Finding no error, we affirm the convictions.
I.
Taylor was indicted for attempted malicious wounding, Code § 18.2-51, maliciously shooting at an occupied building, Code § 18.2-279, and using a firearm while committing a felony, Code § 18.2-53.1. Prior to trial, Taylor’s attorney filed a discovery motion, requesting exculpatory information and evidence affecting the credibility of any of the prosecution witnesses. The prosecutor responded she was unaware of any evidence tending to exculpate Taylor or affecting the credibility of the Commonwealth’s witnesses.
At trial, James Hill, one of the Commonwealth’s witnesses, testified that following a confrontation between himself and Taylor and James Nash, during which Hill displayed a handgun, Taylor and Nash drove to his residence in separate vehicles. According to Hill, they exited their vehicles and both began firing handguns at him while he stood on his front porch. Hill and his wife, Vicky Hill, resided at the house with their adult children, Felicia and Sentel Hill. Vicky and Felicia Hill testified that appellant was one of the two “guys” involved in the shooting at their home. Felicia Hill repeatedly testified that she “saw them shooting.” (Emphasis added.) Sentel Hill did not testify that Taylor was one of the shooters; nor did Florissa Banks testify to that effect. At trial there was a discrepancy between the testimony of James, Felicia and *432 Sentel Hill as to which of two cars the appellant and Nash exited.
Detective McTernan’s notes recorded the events that preceded the shooting and notes that “Nash ... starts firing.” She also records the statement that a “burgundy Cadillac pulled up [and the] guy got out [and] started walking toward [the] house [and] starts firing.” However, specific statements were not attributed to particular witnesses.
Detective Thompson’s notes of his interview with James Hill disclose that Hill identified both Keith Taylor and James Nash as armed with guns and shooting. His notes recounting his interview with Sentel Hill included descriptions of appellant and Nash and statements that they “started fighting.” The notes, however did not reflect any comment from Sentel Hill on the shooting that ensued. Thompson’s notes of Felicia Hill’s pretrial interview state “guy got out of car and walked toward house started shooting randomly.” Thompson’s notes of the interview with Florissa Banks, a neighbor of the Hills, state, “Keith [Taylor] started shooting walked toward house.”
After the convictions, Taylor’s attorney filed a motion to set aside and vacate the verdicts. Following an evidentiary hearing, the trial judge found that “[n]ot one person has said anything inconsistent with the fact that your client [was] out there shooting.” The trial judge denied Taylor’s motion for a new trial, and this appeal followed.
II.
“[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). The Supreme Court reasoned that:
[a] prosecution that withholds evidence ... which, if made available, would tend to exculpate [the accused] or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an *433 architect of a proceeding that does not comport with standards of justice, even though ... his action is not “the result of guile.”
Id. at 87-88, 83 S.Ct. at 1197-1198 (citation omitted).
The Supreme Court has held that “[i]mpeachment evidence ..., as well as exculpatory evidence, falls within the Brady rule.” United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (citing Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)). The Bagley Court stated:
The present case ... does not involve any direct restriction on the scope of cross-examination. The defense was free to cross-examine the witnesses on any relevant subject, including possible bias or interest____ The constitutional error, if any, in this case was the Government’s failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination.... [S]uch suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. Consistent with “our overriding concern with the justice of the finding of guilt” a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.
Id. at 678, 105 S.Ct. at 3381 (citation omitted).
Explaining Bagley’s materiality analysis, the Supreme Court has said:
Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted unlimitedly in the defendant’s acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). Bagley’s touchstone of materiality is a “reasonable probability” of a different result, and the adjective is important. The question is not whether the *434 defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict [worthy] of confidence. A “reasonable probability” of a different result is accordingly shown when the government’s evidentiary suppression “undermines confidence in the outcome of the trial.”
Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (citations omitted).
III.
The testimony of Detectives McTernan and Thompson concerning the witnesses’ pretrial statements did not identify inconsistent or contradictory statements that could have been used to impeach a particular witness. The investigatory notes, to the effect that “they” were shooting, or that “they” got out of their cars and started shooting, or which specifically identified Nash, but did not specifically mention Taylor by name, are not inconsistent with the witnesses’ trial testimony. Moreover, to the extent that the detectives’ notes would support a claim that the witnesses identified only Nash and did not mention Taylor, we do not believe that on this record the disclosure would have materially affected the outcome of the case. Therefore, the trial court did not err in concluding that the Commonwealth did not withhold exculpatory evidence from the accused.
First, neither the investigative notes nor the evidentiary hearing testimony of Detective McTernan contains specific statements attributable to a particular witness. At best, her notes contained general accounts and sketchy conclusions without attribution of what various witnesses said about how the events unfolded. Absent attribution to a particular witness, McTernaris general account of inconsistent or contradictory statements would not have been admissible as a prior inconsistent statement to impeach a particular witness. Furthermore, the appellant has not shown how the disclosure of McTernaris notes would have led to the discovery of exculpa *435 tory evidence which would have been admissible at trial. Evidence that is not admissible at trial or which does not lead to admissible exculpatory evidence cannot violate Brady because there is no “reasonable probability” that its disclosure would have affected the trial. Wood v. Bartholomew, 516 U.S. 1, 5-6, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995) (no Brady violation for failure to disclose polygraph tests which are inadmissible under state law).
Second, none of the accounts which Detective Thompson attributed to specific witnesses were materially contradictory of or inconsistent with those witnesses’ trial testimony. Thompson indicated that he interviewed James Hill, Sentel Hill, Felicia Hill, and Florissa Banks.[1] Thompson’s notes indicated that James Hill identified both Keith Taylor and James Nash as being armed and firing shots. That account was consistent with James Hill’s trial testimony. According to Thompson’s testimony and his notes, none of the witnesses he interviewed stated during the investigative interviews that Taylor was not “a shooter,” that he did not fire shots, that he did not possess a gun, or that he was not there. Furthermore, although Felicia Hill’s account to Thompson appears to identify James Nash as the person who first exited a car and advanced toward James Hill firing a handgun, she did not exclude Taylor from being “a shooter.” Thus, although Felicia Hill testified at trial that Taylor fired shots, we cannot say that her pretrial statements to Thompson were inconsistent with or contradictory to her trial testimony. Although Sentel Hill’s trial testimony implicated Taylor as one of the shooters, this testimony was not inconsistent with a pretrial statement that merely failed to address the shooting at all. Finally, to the extent that various witnesses may have given different accounts during the investigative interviews, as they did at trial, as to whether Nash or Taylor or the person with *436 “braids” or “corn rows” exited the Cadillac or Toyota, the description and designation of which car Nash or Taylor exited was not critical to the identification of who was shooting. Any confusion or inconsistency in the investigative reports or at trial as to which car Nash or Taylor occupied was not material because had that “inconsistency” been disclosed it would not have changed the trial result.
In summary, no witness reported during the investigation that Nash was the sole shooter or that Taylor did not shoot. No investigative statement of any witness who testified at trial was exculpatory or inconsistent with their trial testimony. Accordingly, the Commonwealth was not required to provide Taylor with the investigative notes of McTernan and Thompson because 1) they contained no statements by a particular witness that were inconsistent with or contradictory to that witness’ or another witness’ material testimony, and 2) no specific statement by a particular witness constituted a prior inconsistent statement which could have been used to impeach either the declarant or another witness. The information reflected in the pretrial accounts of the witnesses’ statements would not have produced a “reasonable probability” of a different result. For these reasons, the ruling of the trial court is affirmed.

Affirmed.

. Florissa Banks told Detective Thompson pre-trial that "Keith [Taylor] started shooting [as he] walked toward [the Hill] house. However, at trial she denied that she saw Taylor with a gun or that he was shooting. The failure to disclose this material cannot be deemed a violation of Taylor's rights under Brady.