**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2256-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMA SMITH,

    Defendant-Appellant.

_____

> Argued October 2, 2019 – Decided February 4, 2020
>
> Before Judges Ostrer and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 04-03-0359.
>
> John V. Saykanic argued the cause for appellant.
>
> Marc A. Festa, Senior Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Marc A. Festa, of counsel and on the brief).

PER CURIAM

This case returns to us after we remanded for a hearing on Jama Smith's motion for a new trial based on newly discovered evidence. We assume the reader's familiarity with our prior opinions, affirming on direct appeal Smith's convictions of murder, conspiracy to commit murder, and related weapons offenses, State v. Smith, No. A-2146-06 (App. Div. Aug. 4, 2010), certif. denied, 205 N.J. 78 (2011) (Smith I), and ordering the remand hearing, State v. Smith, No. A-3141-13 (App. Div. Nov. 23, 2015), certif. denied, 228 N.J. 442 (2016) (Smith II).

In brief, the State established through circumstantial evidence that Smith drove a rented SUV while his passenger Willie Evans fatally shot Terryl Lee. The shooting arose out of a dispute between Evans and Lee. Evans was a drug dealer and Lee was his supplier. The cases against Evans and Smith were severed, Smith went to trial first, and Evans did not testify. He pleaded guilty to manslaughter before the jury returned its verdict against Smith.

Three months afterwards, Evans executed the first of two certifications exculpating Smith. The first certification simply stated that Smith "wasn't there" and "didn't have anything to do" with the shooting. In the second certification, executed five years later, Evans attempted to explain why Smith returned the rented SUV from which Evans shot Lee. We quoted the certification at length

in Smith II. In short, Evans contended that Smith had no knowledge of the shooting until the morning after, when Evans asked him to do him a favor to accompany his sister to return the SUV. Evans picked up Smith from his cousin's house, Evans got out at a friend's house, and then Smith picked up Evans's sister and drove to the rental car office, where he was arrested.

Also, five years after the trial, Keshawn Coleman, a Lee associate, recanted his trial testimony that he saw Smith at a drug transaction between Lee and Evans. Coleman was also present when Lee was shot. Coleman had testified at trial that Lee and Evans had a dispute over a drug deal.

The trial court initially denied, without an evidentiary hearing, Smith's new trial motion based on Evans's exculpatory statements, as well as Coleman's recantation. In order to secure a new trial based on newly discovered evidence, "the new evidence must be (1) material . . . and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981). All three elements must be met. Ibid. The "criteria . . . must be examined liberally when new information comes from a co-defendant who is unavailable, as a matter of law, at the time of trial." State v. Robinson, 253 N.J.

Super. 346, 365 (App. Div. 1992). On appeal, we held that the Evans's certifications met the first two elements, but the court needed to assess Evans's and Coleman's credibility in order to properly consider the third element. Smith II, slip op. at 7.

On remand, after hearing from both witnesses, Judge Daniel J. Yablonsky denied Smith's motion in a cogently written opinion. The court found both Coleman and Evans were not credible. The court appropriately recognized that the court's credibility finding was not the end of the analysis; rather, it was a factor – a key factor – in determining whether the witnesses' testimony would probably alter the verdict. "The power of the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence." State v. Ways, 180 N.J. 171, 191-92 (2004). As Judge Yablonsky stated, "The answer to the question of whether new evidence is probably true is the linchpin in determining the probability that such evidence would change the jury's verdict." (emphasis in original). Regarding Evans's credibility, the court found "[m]ost concerning" inconsistencies between his 2011 certification and his hearing testimony. The court also was unimpressed with Coleman's hearing testimony, recanting his trial testimony that he saw Smith with Evans during a drug deal with Lee.

A-2256-16T3

The court concluded that "Evans's testimony was merely designed to give [Smith] a second chance for acquittal"; it "would not likely be found credible by a jury"; and "would probably not cause a change to the original verdict." Also, even if Coleman's hearing testimony were deemed credible at a new trial, it would unlikely cause an acquittal, as Coleman did not affirmatively exculpate Smith.

We defer to the trial court's credibility findings, particularly in the case of recantation testimony, such as Coleman's, that is "generally regarded 'as suspect and untrustworthy.'" Ways, 180 N.J. at 196-97 (quoting State v. Carter, 69 N.J. 420, 427 (1976)). The testimony of a sentenced co-defendant, like Evans, may also be inherently suspect, because he may have "nothing to lose by exonerating" his co-defendant. Robinson, 353 N.J. Super. at 367 (citations omitted).

It is the province of the fact-finder – not the reviewing court – to determine whether to chalk up inconsistencies to failing memory and innocent mistakes, or to weigh them as evidence of dissembling. See Model Jury Charges (Criminal), Prior Contradictory Statements of Witnesses (Not Defendant) (1994). The trial court's findings in that regard are informed by its opportunity, unavailable to an appellate court, to assess witnesses' demeanor and other intangibles. Carter, 69 N.J. at 427-28.

We also review the ultimate decision to grant a new trial for an abuse of discretion. See State v. Smith, 29 N.J. 561, 573 (1959) (stating that the decision to grant a new trial based on newly discovered evidence is vested in a trial court's sound discretion). Although we review de novo the PCR court's legal determinations, State v. Nash, 212 N.J. 518, 540-41 (2013), it is not our role to decide anew whether a new trial is warranted.

Applying that standard of review, we discern an insufficient basis to disturb the trial court's order denying a new trial. At the remand hearing, Evans testified that on the night of the homicide, he parked the SUV about three blocks from his house; he drove to his sister in his personal vehicle to give her the SUV's keys so she could return the vehicle the next day. He drove her around the block and she got out. He said that the next morning, his sister told him she saw parole officers outside his house. He then asked Smith to accompany her, because she was nervous. He provided no further details as to how his sister retrieved the vehicle; and how or where she picked up Smith.

Evans offered a different version in his 2011 certification. He claimed that the morning after the homicide, he learned that parole officers were at his residence. He called Smith and asked him to take the vehicle to Evans's sister. Evans then drove the SUV to the house of Smith's cousin, Latonya Brown, where

Smith was living at the time. Smith got into the car, dropped Evans off at his girlfriend's house, picked up Evans's sister at her place, and drove to the rental car office.

Evans's testimony was also inconsistent with Smith's own Mirandized statement to police on the day he was arrested. We recognize the statement was unrecorded, and, at trial, Smith challenged the credibility of the detective who reported Smith's statement. According to the detective, Smith said he drove the SUV the night of the homicide (not the morning after); he dropped it off in front of Evans's house (not three blocks away); he walked to his girlfriend's house, where he spent the night (not his cousin's house, where Evans said he picked him up); then returned to the vehicle in the morning, picked up Evans's sister, and then delivered the vehicle to the rental car office.

Furthermore, Smith's statement contradicted his purported alibi witnesses, Smith's aunt and cousin, Doris and Latonya Brown. They both testified that Smith was at their house all night. Also, contrary to Smith's statement, a police detective testified that the night of the homicide, they searched for the SUV and saw none parked at Evans's address.

Evans's 2011 certification was also at odds with Doris Brown's trial testimony that, although Smith and Evans were often together, she never saw

Evans come to her house to see Smith. Latonya Brown also testified that she never saw Evans pick up Smith in an SUV at her house. Regarding Evans's hearing testimony that he drove his "personal vehicle" to deliver the keys to his sister, Doris Brown testified that neither Smith nor Evans owned or had their own car.

Judge Yablonsky also found implausible Evans's hearing testimony that the person who he said was at the wheel of the SUV before the homicide – James Felton – was unaware of Evans's plan to shoot Lee. Evans testified that Felton knew that Evans carried a gun. Evans was driving the SUV, and Felton was the passenger, when Evans saw Lee in another vehicle. He asked Felton to drive and follow Lee, after Evans moved to the back seat. "It is hard to believe that Felton, without any knowledge of Evans's plan, stalked the victim and facilitated the drive-by" shooting.

We also will not disturb Judge Yablonsky's credibility finding regarding Coleman, who recanted his trial testimony that he saw Smith with Evans during a drug deal with Lee. The court recognized that the trial testimony helped establish the motive and intent for the homicide. Coleman helped establish that Smith and Evans were in the drug trade together, and were both at odds with Lee, their supplier. The court found that Coleman not only lacked recall, but

professed not to understand questions that the court considered "simple and straight-forward."

In sum, we reject Smith's contention that the trial court abused its discretion in denying him a new trial on the basis of Evans's exculpatory statements and Coleman's recantation.

We also decline to address two arguments that Smith presents, for the first time, on appeal. Smith argues that there is additional newly discovered evidence that corroborates Evans's assertion that James Felton, and not Smith, drove the SUV while Evans fatally shot Terryl Lee. That evidence is Coleman's 2010 conviction for Felton's murder. Coleman was convicted in 2010 for murdering Felton outside a chicken store in Paterson in 2007. See State v. Coleman, No. A-1752-10 (App. Div. Oct 3, 2012) (affirming the conviction on direct appeal); State v. Coleman, No. A-0779-15 (App. Div. May 3, 2017) (affirming the denial of post-conviction relief). Smith speculates about Coleman's motive for killing Felton. Smith asserts – without providing a basis – that Coleman believed that Felton, not Smith, helped Evans kill Lee. We do not address whether, if Smith obtained evidence supporting Coleman's asserted belief in Felton's complicity, it would provide a basis for a new trial, in part by bolstering Evans's own statements. Smith must present such evidence to the trial court in the first

instance. "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available" unless the issues pertain to the court's jurisdiction or a significant public interest. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

For the same reason, we decline to reach Smith's newly minted argument that the State violated his due process rights by withholding exculpatory evidence, in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). The argument is predicated on the assertion that the State presented false testimony by Coleman, the jail house snitch Rashawn Barrett, and Davon Forbes. See Smith II, slip op. at 1-2 (discussing Barrett's testimony and Forbes's prior written statement that the State introduced into evidence). The Brady-Giglio argument should first be made to the trial court. Nieder, 62 N.J. at 234.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2256-16T3