[Cite as *State v. Long*, 2020-Ohio-4557.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190566 |
| | | TRIAL NO. B-0402803 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JOHN LONG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed as Modified

Date of Judgment Entry on Appeal: September 23, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John W. Long*, pro se.

**ZAYAS, Presiding Judge.**

{¶1}  Defendant-appellant John Long appeals the Hamilton County Common Pleas Court's judgments denying his 2019 "Petition to Vacate and/or Set Aside Judgment of Conviction or Sentence, Pursuant to O.R.C. 2953.23," "Motion for Production of Grand Jury Transcripts Pursuant to Crim.R. 6(E)," and "Request for Extension of Time to File Motion for New Trial Pursuant to Crim.R. 33(B)."  We affirm the court's judgments.

*Procedural Posture*

{¶2}  In 2004, Long was convicted of murder in the August 18, 2003 stabbing death of Amerrintha Spikes.  Police Officers Thomas Coombs and Todd Pierson, responding to an emergency call made by Shalese Gilmore, were directed by Gilmore and Petrina Crawford to a warehouse loading dock, where Spikes was found dead of multiple stab wounds.  Officer Coombs testified that Gilmore and Crawford had told him that they had seen a man that they recognized from the neighborhood, running from the loading dock into a nearby alley, carrying a red shirt and pulling up jeans shorts.  In that alley, Officer Coombs found a pair of blue jeans shorts.  In the pocket of those shorts was a receipt for a bus ticket issued in the name, "John Long."  Police Officer Robert Carpenter later collected the shorts and removed them to the coroner's office, where they were submitted for processing.

{¶3}  Forensic analyses of other items found near the crime scene led police to a number of potential suspects who, after further investigation, were cleared.  The name on the bus-ticket receipt led police to initially develop as a suspect a man named John E. Long.  The focus turned to the petitioner, John W. Long, on December 29, 2003, when Marlonda Garrett told the lead detective that she had purchased the bus ticket for John W. Long, and that Long was then incarcerated in the Hamilton

2

County Justice Center.

{¶4} Thereafter, Crawford identified John W. Long from a photo spread. A police officer assigned that night to assist in securing the crime scene also identified Long as the man who had, at three separate locations, approached the officer and questioned her extensively about the murder. And analyses of biological material found on the jeans shorts showed Spikes's blood on the outside of the shorts and a mixture of DNA on the waistband consistent with that of Spikes and Long.

{¶5} The state's response to Long's discovery request listed Gilmore as a possible trial witness, but she was physically unable to appear. Crawford testified at trial. She confirmed that she knew Long from the neighborhood and had seen him that night running from the loading dock and into the alley. She stated that Long had been naked, but for the shoes on his feet, and that he had dropped and then picked up a red shirt and something that sounded like metal when it hit the ground. Crawford stated that while she had earlier seen Long wearing dreadlocks, he appeared that night to be bald, possibly because he wore a stocking on his head.

{¶6} Long took the stand in his own defense. He admitted that the jeans shorts were his, but he denied killing Spikes. He stated that he had slept on the loading dock for several days before the murder, and that he had left those shorts there four days earlier.

{¶7} The jury found Long guilty of murder. We affirmed his murder conviction on direct appeal. *See State v. Long*, 1st Dist. Hamilton No. C-040643 (Oct. 26, 2005), *appeal not accepted*, 108 Ohio St.3d 1489, 2006-Ohio-962, 843 N.E.2d 794; *see also State v. Long*, 1st Dist. Hamilton No. C-100285, 2010-Ohio-6115 (remanding for correction of postrelease control). We also affirmed the denial of postconviction petitions and DNA-testing applications filed between 2010 and 2019.

*See State v. Long*, 1st Dist. Hamilton No. C-120521 (Apr. 24, 2013), *appeal not accepted*, 136 Ohio St.3d 1476, 2013-Ohio-3790, 993 N.E.2d 779; *State v. Long*, 1st Dist. Hamilton Nos. C-130566 and C-130605 (June 13, 2014), *appeal not accepted*, 140 Ohio St.3d 1466, 2014-Ohio-4629, 18 N.E.3d 446; *State v. Long*, 1st Dist. Hamilton No. C-140420 (Mar. 20, 2015); *State v. Long*, 1st Dist. Hamilton No. C-180541, 2019-Ohio-4857, *appeal not accepted*, 158 Ohio St.3d 1436, 2020-Ohio-877, 141 N.E.3d 247.

{¶8} In 2018, in connection with Long's 2015 postconviction petition, we remanded to the common pleas court for entry of a justiciable-claim finding for his public-records request. *State v. Long*, 1st Dist. Hamilton No. C-170529, 2018-Ohio-4194. That request was filled in May 2019, when Long received the case file.

{¶9} In August 2019, Long filed with the common pleas court a "Motion for Leave to File Motion for a New Trial Pursuant to Crim.R. 33(B)" and a "Petition to Vacate and/or Set Aside Judgment of Conviction or Sentence, Pursuant to O.R.C. 2953.23." With his postconviction petition, he filed a "Motion for Production of Grand Jury Transcripts Pursuant to Crim.R. 6(E)." And two weeks later, he filed a "Request for Extension of Time to File Motion for New Trial Pursuant to Crim.R. 33(B)," asking for 30 days to file a new-trial motion, "in the event that" the court granted his motion for leave to file a new-trial motion. Three of those four filings were overruled by separate entries dated September 17, 2019: the postconviction petition, the motion for grand-jury testimony, and the "motion for extension to file new-trial motion."

{¶10} Long here appeals from those three judgments. On appeal, he presents three assignments of error challenging the denial of his postconviction petition and the overruling of his motion for grand-jury testimony. He has not

4

assigned as error the overruling of his "Request for Extension of Time to File Motion for New Trial Pursuant to Crim.R. 33(B)," thus abandoning his appeal from that judgment.

*The Postconviction Petition*

{¶11}  In his first and third assignments of error, Long challenges the denial of his postconviction petition without an evidentiary hearing.  We overrule those assignments of error upon our determination that the common pleas court had no jurisdiction to entertain the petition.

{¶12}  In his petition, Long sought relief from his murder conviction on the ground that he had been denied a fair trial by multiple instances of prosecutorial misconduct.  In his first ground for relief, he asserted that the state had failed to disclose in discovery exculpatory evidence in the form of eyewitness descriptions of the fleeing suspect that, he insisted, would have directed the investigation away from him and would have warranted DNA analysis of all blood evidence recovered from the crime scene.  Long supported that claim with statements made to police by Shalese Gilmore, Ruby Gentry, Melissa Howell, Brandy Jones, and Steve Wyatt, all of whom had been listed as possible witnesses in the state's discovery response, and none of whom testified at trial.  Gentry stated that she had heard Gilmore arrange for the victim to "trick" with Gilmore's "friend," had seen Gilmore run in the direction of the victim's screams, and had heard Gilmore state on her return that her "friend" had killed the victim.  Neither Gentry nor Howell could identify the man, because his face had been concealed.  Jones was working that night as a security guard at an apartment building seven blocks from the crime scene. Shortly after the time of the murder, Jones, with her boyfriend, Wyatt, denied entry to the building by a man who wore a blood-covered shirt, possibly had a cut on his hand, and claimed that he had

just killed someone.

{¶13} In his second ground for relief, Long asserted that the state had withheld evidence demonstrating that the police had "mishandled and/or tampered with [and] thereby alter[ed] the probative value of" the jeans shorts. He offered in support of that claim Officer Coombs's "Police Officer's Notes," in which he had left blank the space for noting any evidence "recover[ed]." Long argued that those "Notes" demonstrated that the officer had perjured himself when he testified at trial that he had found the shorts in a nearby alley, and that the state, by eliciting the officer's perjured testimony, had "misrepresent[ed]" the proximity of the shorts to the crime scene.

{¶14} In his third ground for relief, Long contended that the state had withheld impeachment evidence demonstrating that the lead detective had provided "misleading and false testimony" when she stated that, in the course of developing John E. Long as a suspect, police had shown eyewitnesses his photograph, but no one had identified John E. Long as the man fleeing the crime scene. Long supported that claim with Shalese Gilmore's November 7, 2003 statement to police, along with the summary of her statement provided in the case's "Investigative Log," when Gilmore had selected John E. Long from a photo spread. Gilmore stated that she had "tricked" that night with John E. Long and then watched him go off with the victim, and that the picture of John E. Long "looked[] like" the man she had seen fleeing the scene 15 minutes later.

{¶15} In his fourth ground for relief, Long argued that the evidence offered in support of his indictment could not have been sufficient to establish probable cause, because Crawford did not identify him in a photo spread until two months after return of the indictment, and the state had "no other evidence." Long

supported that claim with documentation showing the date that Crawford had made the identification. And he cited that claim in support of his Crim.R. 6(E) motion for production of grand-jury transcripts, arguing that Crawford's postindictment identification demonstrates "a strong probability that [the lead detective] committed perjury at the grand jury hearing that resulted in the indictment."

{¶16} *The jurisdictional standard.* R.C. 2953.21 et seq. confers upon a common pleas court jurisdiction to grant relief from a conviction upon proof of a constitutional violation during the proceedings resulting in that conviction. *See* R.C. 2953.21(A)(1); *State v. Powell*, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1st Dist.1993). The fair-trial guarantee of the Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes upon the state a duty to disclose to a criminal accused evidence that is favorable and material to his guilt or punishment. *See Brady v. Maryland*, 373 U.S. 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The right to a fair trial is also implicated when the state uses, or fails to correct, evidence that it knows is false. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Both principles extend to evidence affecting a witness's credibility. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue* at 269-270.

{¶17} Long's 2019 postconviction petition was his fourth and was filed well after the time prescribed by R.C. 2953.21(A)(2) had expired. R.C. 2953.23 closely circumscribes the jurisdiction of a common pleas court to entertain a late or successive postconviction petition. The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his postconviction claims depend, or that his claims are predicated upon a new, retrospectively applicable right recognized by the United States Supreme Court since the time for

7

filing his petition had expired. R.C. 2953.23(A)(1)(a). And he must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted * * *." R.C. 2953.23(A)(1)(b). If the petitioner does not satisfy the R.C. 2953.23(A)(1) jurisdictional requirements, the petition is subject to dismissal without a hearing. *See* R.C. 2953.21(D) and (F) and 2953.23(A).

{¶18} *No jurisdiction to entertain postconviction claims.* In affirming Long's murder conviction in the direct appeal, this court rejected his challenge to the balance struck by the jury in weighing the evidence adduced at trial. *See Long*, 1st Dist. Hamilton No. C-040643. That evidence included Long's admissions that he had frequented and had, that night, been in the vicinity of the loading dock, and that the shorts found in the alley were his; Petrina Crawford's identification of Long as the man running from the loading dock into the alley; the recovery from the alley of the jeans shorts containing his bus-ticket receipt; the presence on those shorts of his and Spikes's DNA and Spikes's blood; and the police officer's description of Long's behavior during her encounters with him following the murder.

{¶19} In his petition, Long contended that he had been denied his constitutional right to a fair trial by prosecutorial misconduct in failing to disclose in discovery exculpatory and impeachment evidence and in knowingly eliciting and failing to correct trial testimony shown by the undisclosed evidence to be false. He supported those claims with evidence that, if disclosed in discovery, might have served to discredit in part some of the state's evidence.

{¶20} But Long's petition and its supporting evidentiary material, when considered with the trial record, cannot be said to demonstrate that, but for the

claimed constitutional violations, no reasonable factfinder would have found him guilty of Spikes's murder. Because Long failed to satisfy the R.C. 2953.23(A)(1) jurisdictional requirement of demonstrating an outcome-determinative constitutional violation, his late and successive postconviction petition was properly dismissed without a hearing. Accordingly, we overrule the first and third assignments of error.

*Motion for Transcript of Grand-Jury Proceedings*

{¶21} In his second assignment of error, Long challenges the overruling of his "Motion for Production of Grand Jury Transcripts Pursuant to Crim.R. 6(E)." This challenge is equally untenable.

{¶22} R.C. 2939.19 and Crim.R. 6(E) preclude disclosure of the opinions, deliberations, and votes of grand jurors. Crim.R. 6(E) permits disclosure of "other matters occurring before the grand jury * * * only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Thus, "[g]rand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph two of the syllabus.

{¶23} But a court has no jurisdiction to entertain a Crim.R. 6(E) motion for grand-jury transcripts, when the motion was not filed in a pending proceeding within that court's jurisdiction. *See State v. Littlepage*, 1st Dist. Hamilton Nos. C-170207 and C-170157, 2018-Ohio-2959. Long's "Motion for Production of Grand Jury

9

Transcripts Pursuant to Crim.R. 6(E)" sought those transcripts to support the fourth ground for relief advanced in his postconviction petition. The common pleas court, lacking jurisdiction to entertain Long's postconviction petition, had no jurisdiction to entertain the accompanying Crim.R. 6(E) motion. We, therefore, overrule the second assignment of error.

## *We Affirm*

{¶24} The common pleas court had no jurisdiction to entertain either the "Petition to Vacate and/or Set Aside Judgment of Conviction or Sentence, Pursuant to O.R.C. 2953.23" or the "Motion for Production of Grand Jury Transcripts Pursuant to Crim.R. 6(E)." Accordingly, the petition and the motion were subject to dismissal for lack of jurisdiction. We, therefore, modify the court's judgments overruling the petition and the motion to reflect the dismissal of those filings. *See* App.R. 12(A)(1)(a). And we affirm the judgments as modified.

Judgments affirmed as modified.

**MYERS** and **CROUSE, JJ.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.