# THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE, | ) | | |
| | ) | | |
| v. | ) | ID No. | 1901009072 |
| | ) | | |
| BRIAN WILSON, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Defendant's Motion for a New Trial or Dismissal*,
**DENIED.**

Mark A. Denney, Jr., Esq. and Michael B. Cooksey, Esq., Deputy Attorneys General, Department of Justice, Wilmington, Delaware, *Attorneys for the State of Delaware*.

Anthony A. Figliola, Jr., Esq., Greto Law, Wilmington, Delaware. *Attorney for Defendant*.

**RENNIE, J.**

## I.    INTRODUCTION

Defendant, Brian Wilson moves for a New Trial or Dismissal on the basis that the State allegedly committed a *Brady* violation surrounding the testimony of witness, Timothy Keyes.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2020, following an eight-day jury trial, Defendant, Brian Wilson ("Defendant") was found guilty of one count of Murder First Degree, one count of Conspiracy First Degree, and one count of Criminal Solicitation First Degree.  On March 13, 2020, Defendant was sentenced to the balance of his natural life at Level V.[1]

Timothy Keyes ("Keyes") was presented as a witness against Defendant at trial in the Delaware Superior Court.[2]  On December 6, 2019, approximately three weeks prior to the start of Defendant's trial, Keyes, with his attorney present, partook in an interview with Sgt. Robert Fox of the Wilmington Police Department.  During this interview, Keyes made statements against the Defendant as it pertained to Defendant's upcoming trial.  Even though Keyes was called as a

---

[1] D.I. 49.  Defendant received the following sentences: (1) Murder First Degree, the balance of his natural life at Level V; (2) Conspiracy First Degree, five years at Level V, suspended for six months at Level IV DOC Discretion, followed by one year at Level III; and (3) Criminal Solicitation First Degree, five years at Level V, suspended for 6 months at Level IV DOC Discretion, followed by one year at Level III.  *See id.*
[2] *See generally* D.I. 42 [hereinafter "Keyes' Partial Trial Tr."].

witness for the State, he was uncooperative, which required the State introduced his out-of-court statement pursuant to 11 *Del. C.* § 3507.[3] During his examination before the jury, Keyes repeatedly denied receiving a benefit from the State for his testimony.[4] This was later determined to be misleading, not as it pertained to an offer from the State, but as to an offer from the Federal Government ("Federal Offer"). Defendant takes issue with Keyes' Federal Offer not being presented to the jury.

On August 8, 2020, Defendant filed a direct appeal to the Delaware Supreme Court from his conviction and sentencing.[5] On November 6, 2020, the parties filed a joint motion to stay briefing in the appeal. On December 11, 2020, the Supreme Court granted the parties' request to stay and remanded the case to the Superior Court to determine the *Brady* issue.[6] On December 14, 2020, in connection with the *Brady* issue, Defendant filed a Motion for New Trial or Dismissal.[7] On January 22, 2021, the State filed its Response in Opposition.[8] On January 29, 2021, Defendant filed his Reply.[9] This matter is ripe for review.

---

[3] D.I. 63 ¶ 13 (citing Defendant's Exhibit D, at 10) [hereinafter "Def.'s Mot."]. *See* 11 *Del. C.* § 3507.
[4] Def.'s Mot. ¶ 10 (citing Defendant's Exhibit D, at 17-19).
[5] D.I. 60.
[6] D.I. 61.
[7] Def.'s Mot.
[8] D.I. 65 [hereinafter "State's Resp."].
[9] D.I. 64 [hereinafter "Def.'s Reply"].

## III. PARTIES' CONTENTIONS

The gravamen of Defendant's request for a New Trial or Dismissal is that the State allegedly failed to disclose that witness Keyes was granted pre-sentence release from federal prison, and that he received sentencing consideration on his federal charges in return for his testimony against Defendant. Defendant asserts that this violated the due process protections outlined by the United States Supreme Court in *Brady v. Maryland*.[10] In response, the State argues that presentation of Keyes' federal charges and Federal Offer, implicates a *Brady* consideration, but is not material because it creates no reasonable probability that the result of Defendant's trial would have been any different.[11] Further, the State posits that as soon as it was apprised of this information, it shared it with Defendant to avoid a *Brady* violation.

---

[10] 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[11] State's Resp. at 1.

4

## IV. DISCUSSION

In *Brady v. Maryland*, the U.S. Supreme Court defined the existence of a *Brady* violation as the "suppression by the prosecution of evidence favorable to an accused . . . [that] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[12]

A *Brady* violation stems from the State's failure "to disclose material evidence that is favorable to the accused, because it is either exculpatory or impeaching, causing prejudice to the defendant."[13] To determine whether a *Brady* violation has occurred, courts look for the existence of three components: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[14] To satisfy this burden, "the State 'must disclose all relevant information obtained by the police or others in the Attorney General's Office to the defense.'"[15] However, the Delaware Supreme Court has notably

---

[12] *Wright v. State*, 91 A.3d 972, 987 (Del. 2014) (citing *Brady*, 373 U.S. at 87).

[13] *State v. Taylor*, 2019 WL 6353355, at *3 (Del. Super. Nov. 26, 2019) (citing *Wright*, 91 A.3d at 977).

[14] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

[15] *Taylor*, 2019 WL 6353355, at *3 (citing *Wright*, 91 A.3d at 977 (citing *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citing Restatement (Second) of Agency § 272 (1958))).

stated that "[t]he State's failure to disclose exculpatory evidence, . . . does not, alone and without more, constitute a *Brady* violation"[16]

The Superior Court will grant a motion for new trial on the basis of a *Brady* violation, "if it finds the information in question to be material in determining defendant's guilt, and where failure to provide said information 'undermined confidence in the outcome of the trial.'"[17]

## A. *Brady* and its Progeny

In *Jackson v. State*, the Delaware Supreme Court analyzed and applied *Brady* and its progeny. The Court held generally that "[t]he suppression of material evidence violates *Brady*."[18] It specifically found that "[e]vidence [that] the defense can use to impeach a prosecution witness by showing bias or interest . . . falls within the *Brady* rule."[19] The issue of materiality, as applied to *Brady*, was expanded in *United States v. Bagley*,[20] where the United States Supreme Court held that "favorable evidence is material . . . 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "[21] This definition was further expanded in *Kyles v.*

---

[16] *Starling*, 882 A.2d at 756.

[17] *Id.* (citing *State v. Scott*, 2018 WL 824207, at *1 (Del. Super. Feb. 12, 2018) (citing *Atkinson v. State*, 778 A.2d 1058, 1063 (Del. 2001))).

[18] *Jackson v. State*, 770 A.2d 506, 516 (Del. 2001) (emphasis added).

[19] *Id.* at 515 (citing *Michael v. State*, 529 A.2d 752, 756 (Del. 1987) (citing *Giglio v. United States*, 405 U.S. 150 (1972))).

[20] 473 U.S. 667 (1985).

[21] *Jackson*, 770 A.2d at 516 (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

*Whitley*,[22] where the U.S. Supreme Court held that although a *Brady* violation is "triggered" by the existence of potentially favorable but undisclosed evidence, "'a showing of materiality *does not* require demonstration by a preponderance that disclosure . . . would have resulted ultimately in the defendant's acquittal,' but rather whether in the absence of the undisclosed evidence the defendant received a fair trial, 'understood as a trial resulting in a verdict worthy of confidence.'"[23]

In assessing these issues, courts look to whether the alleged suppression "undermines confidence in the outcome of the trial."[24] Applying these principles, the Delaware Supreme Court, in *Jackson v. State*, held that although a *Brady* violation occurred, such violation "did not put the case in such a light 'as to undermine confidence in the verdict.'"[25] This Court arrives at the same conclusion in regards to the information surrounding Timothy Keyes' testimony in this case.

## B. The Evidence Was Not Suppressed by the State

Defendant argues that the evidence surrounding Keyes' motivation to testify against Defendant was not, but should have been, available for the purposes of impeachment. Defendant contends that if the jury had known about the circumstances behind Keyes' testimony, the verdict in this case may have differed.

---

[22] 514 U.S. 419 (1995).
[23] *Jackson*, 770 A.2d at 516 (quoting *Kyles*, 514 U.S. at 434).
[24] *Id.* (citing *Kyles*, 514 U.S. at 434 (citing *Bagley*, 473 U.S. at 678)).
[25] *Id.* at 516–17 (citing *Kyles*, 514 U.S. at 435).

The Court first considers the circumstances surrounding Keyes' testimony and whether the evidence was suppressed by the State. The State's interest in Keyes' testimony came as a result of other witnesses stating that Keyes was someone with whom the police should speak.[26] On December 6, 2019, Keyes was interviewed by Sgt. Fox of the Wilmington Police Department. This interview was conducted while Keyes had a pending motion in federal court to be released on bail.[27] Keyes' motion resulted in a sealed hearing before the U.S. District Court, where the U.S. District Court reached its pre-sentencing release decision based on federal cooperation and medical reasons alone.[28] Only after reaching this decision as to pre-sentence release in connection with Keyes' cooperation with the federal case, did the attorneys raise with the federal court the possibility of Keyes offering testimony in Defendant's state court trial.[29] At the time, the State was unaware of these happenings surrounding any arrangements made with Keyes, as it related to his testimony in Defendant's trial.[30]

After review of the unsealed transcript of the hearing before the U.S. District Court, it is reasonable to infer that Keyes was motivated to testify for the State after his conversation with Sgt. Fox. However, this does not speak to how that

---

[26] Keyes' Partial Trial Tr. at 14:6–13.
[27] *Id*. 17:3–18:23.
[28] State's Exhibit 4, Unsealed Transcript of January 6, 2020 Motion Hearing in U.S. v. Timothy Keyes, before The Honorable Leonard A. Stark at 26:12-28:6.
[29] *Id.* at 28:9–29:22.
[30] State's Resp. at 3–4.

testimony ultimately panned out at trial. As to disclosure, once the State was in possession of the information concerning potential impeachment evidence, that material was provided to Defense Counsel.[31] The State provided information surrounding Keyes' motivation to testify at Defendant's trial when it became available to it.[32] On this basis, the Court finds that the State did not withhold information, and the evidence at issue was not suppressed.

### C. The Evidence Was Not Material and Did Not Create A Probability of Undermining the Verdict

Keyes' Federal Offer would generally be considered as impeachment evidence. Hence, the Court addresses the issues of materiality and probability of undermining the verdict. In doing so, the Court considers "whether in the absence of the undisclosed evidence the defendant received a fair trial, 'understood as a trial resulting in a verdict worthy of confidence.'"[33] To assess the issue of materiality, the Court reviews the relevant portions of the record in aggregate.

On October 21, 2020, the United States Attorney's Office submitted a letter to the State addressing the "potential impeachment material for Timothy Keyes[.]"[34] The letter indicates that the federal prosecutor told Keyes that "if he testifies in Wilson's state trial, his cooperation would factor into the government's

---

[31] State's Resp. at 2

[32] *See State v. Taylor*, 2019 WL 6353355, at *4 (Del. Super. Nov. 26, 2019).

[33] *Jackson v. State*, 770 A.2d 506, 516 (Del. 2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

[34] State's Exhibit 1 [hereinafter "USAO Letter"].

ultimate sentencing recommendation in Keyes' federal case."[35]  According to the letter, this offer was provided to Keyes prior to his meeting with Sgt. Fox.[36]  The letter also indicated that the State was not present during the offer meeting, but later became aware of Keyes' potential testimony, leading to the State calling him as a witness in Defendant's case.[37]

At first blush, it would seem reasonable that Keyes would be motivated by the possibility of receiving a federal sentencing benefit in exchange for his cooperation.  However, any benefit that Keyes anticipated would have been predicated upon his cooperation with the State in Defendant's state trial.  Keyes did not cooperate and thus, could not have been expected to receive anything in exchange for his testimony.  To the contrary, Keyes' testimony appeared purposed at assisting Defendant's case. [38]

---

[35] USAO Letter at 2–3.

[36] *Id.* at 2–3 ("Prior to [the interview with Sgt. Fox] [the Assistant United States Attorney] told Keyes that if he testified in Wilson's state trial, his cooperation would factor into the government's ultimate sentencing recommendation in Keyes' federal case.").

[37] *Id.* at 3 ("[T]he lead prosecutor on [Defendant's] state trial, was not present during the [offer meeting with the Assistant United States Attorney], but later became aware of Keyes' potential testimony and ultimately called him as a witness – as well as a number of other cooperating federal defendants – as part of the state's case.").

[38] It could be argued that Defendant's motivation to change his story was his fear of retribution from Defendant's cohorts.  Keyes informed the State that he feared someone "might try to impress [Defendant] and exact revenge on him for testifying." Keyes' Partial Trial Tr. at 4:11–21.

At the outset, Keyes presented as an uncooperative witness.[39] First, Keyes only appeared for trial by way of trial subpoena and ultimately a warrant. He was not inclined to appear for court otherwise. In fact, in his testimony before the jury, Keyes stated: "I don't want to be involved with this, with this case. It has nothing to do with me. And as far as the situation where [Defendant's] here for, I don't know anything . . . he never expressed anything to me about this case."[40] Next, before taking the witness stand, Keyes told the prosecutors that he planned on "taking the 5th" and not testifying.[41] At trial, while on the witness stand, Keyes retracted his prior statements made to Sgt. Fox, thereby forcing the State to offer his prior testimony under 11 *Del. C.* § 3507.[42] In addition to stating that his prior statement to Sgt. Fox was based on hearsay, Keyes unequivocally stated, in response to a question from Defense Counsel, that Defendant never admitted to hiring anyone to kill the victim in this case.[43] Indeed, Keyes' testimony was so antithetical to the State's interest that in closing arguments, Defense Counsel encouraged the jury to believe Keyes' in-court testimony as "truth."[44]

---

[39] Trial Tr. at 59:3–4. Defense Counsel has also acknowledged that Keyes was "a reluctant witness . . . ." Def.'s Mot. ¶ 13.

[40] Keyes' Partial Trial Tr. at 8:6–9, 9:22–10:5.

[41] *Id.* at 3:1–22.

[42] Trial Tr. at 59:3–10.

[43] Keyes' Partial Trial Tr. at 26:1–5.

[44] Trial Tr. at 59:3–10 ("And you can support that basically by, first off, Timothy Keyes. He didn't want to be up there. Now, he wrote a letter to [Defendant's] mother and said, I got him, because he's going to get up on the witness stand now and tell the truth. He's not going to rely on that story he gave to Mr. Fox. He's going on the witness stand and tell the truth. And the

On the other hand, the State was forced to attempt to impeach Keyes with a letter that he wrote to Defendant's mother shortly before Keyes was scheduled to testify for the State.[45] In that correspondence from Keyes to Defendant's mother, Keyes indicated that he would help out Defendant at trial.[46] Defense Counsel presented to the jury, that Keyes did follow through on his letter by telling the "truth" and not "rely[ing] on that story he gave to Mr. Fox."[47]

In sum, Keyes' testimony, while offered by the State, was not helpful to the State. And the disclosure that Keyes was offered possible consideration in his federal sentencing if he cooperated with the State in Defendant's trial would not have been so material as to advance Defendant's case any further, because his testimony was more favorable to Defendant than to the State. Hence, even in the absence of the disclosure of the specifics behind Keyes' potential deal with the federal government, Defendant received a fair trial resulting in a verdict worthy of confidence.

---

truth is, he didn't know anything. He heard it in prison.").
[45] The letter was obtained by the defense and provided to the State prior to Keyes' testimony.
[46] Trial Tr. at 59:3–10.
[47] *Id.* at 59:3–10.

For this reason, the Court finds that Defendant has failed to demonstrate that "the evidence creates a reasonable probability that, had the evidence been disclosed . . . the result of the proceeding would have been different."[48]

### D. Defendant's Claim That Keyes Committed Perjury By Not Disclosing His Federal Offer Is Unavailing

Defendant also argues against the veracity of Keyes' testimony, and alleges that Keyes perjured himself when he stated that he was not offered anything in exchange for his testimony. Defendant asserts that Keyes' testimony was central to the case and thus, Defendant was unfairly prejudiced. The record shows otherwise.

The Court recognizes that Keyes' statement that he did not receive any offer in exchange for his testimony was misleading if understood as pertaining to his federal charges. However, it remains true as it pertains to any offer from the State in Defendant's case. The State did not offer Keyes any benefit in exchange for his testimony. An objective reading of the transcript could lead to the conclusion that Keyes understood the questions to pertain to an offer from the State, which was non-existent. However, even if Keyes was deemed to have perjured himself by intentionally failing to disclose the Federal Offer that was made for his cooperation in the state case, Defendant was not precluded from effectively impeaching Keyes.

---

[48] *Jackson v. State*, 770 A.2d 506, 516 (Del. 2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

Even though the information at issue falls under the "impeachment evidence" category of *Brady*, Defendant cannot demonstrate that he was unable to effectively impeach Keyes without the benefit of such information. During cross examination, Defense Counsel did inquire into Keyes' motivation for testifying, but he quickly realized that Keyes' testimony was helpful to Defendant's case and pivoted from that line of questioning.[49] At that point, it would have been unfruitful to impeach Keyes since his testimony served to benefit Defendant. Instead, Defendant argued to the jury that Keyes' in-court testimony was to be believed, thereby thwarting the benefit to be derived by the State from its cooperating witness.

Regardless, because Keyes' reliability, credibility, and motivations were posed by Defense Counsel to the jury *to be believed*, this Court is unable to find that the absence of such impeachment material prejudiced Defendant. Moreover, even if this Court did find the evidence to be material, the limited potential for Keyes' credibility to be impeached did not put the case in such a light as to undermine the confidence in the verdict.[50]

---

[49] Keyes' Partial Trial Tr. at 17:15–18, 21:14–22:10, 24:18–26:5.

[50] *See Jackson*, 770 A.2d at 516–17 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)) (finding that even when presented with the "concern that the prosecutors' tactics denied the jury the opportunity to evaluate fully and fairly [the witness'] credibility, the potential for [his] credibility to be impeached did not put the case in such a light 'as to undermine confidence in the verdict[,]'" where the overwhelming evidence established the defendant's guilt.).

**E. The Evidence of Defendant's Guilty was Overwhelming**

Finally, the Court considers whether the failure to disclose Keyes' Federal Offer unfairly prejudiced Defendant, in light of the other evidence that was presented against him at trial. In reaching its conclusion, the jury had available to it overwhelming, well corroborated, credible evidence in the forms of text messages, police testimony, and a 9-1-1 call that established that an attempted robbery of high-stakes dice game occurred on the East Side of Wilmington, just days before the murder at issue. Multiple sources and witnesses were presented against Defendant for the purpose of demonstrating his involvement in the alleged crimes.[51] In his Reply, Defendant does not refute that such evidence exists. Instead, his argument is premised on the possibility that the jury's verdict may have differed if the circumstances surrounding Keyes' Federal Offer were directly presented.[52] Defendant fails to rebut or deny that substantial evidence exists, apart from Keyes' testimony, that overwhelmingly establishes Defendant's guilt. For these reasons, the Court finds that the evidence does not undermine the confidence in the outcome of the trial.

---

[51] State's Resp. at 9–11.

[52] Defendant's reliance on *Buckham v. State*, 185 A.3d 1 (Del. 2018) in support of this argument is unavailing, as the facts in *Buckham* are inapposite to the facts in this case.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial Or Dismissal is **DENIED.**

**IT IS SO ORDERED THIS 19th day of March, 2021.**

_____
Sheldon K. Rennie, Judge

16