MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2022 ME 24
Docket:      Cum-21-313
Argued:      March 8, 2022
Decided:     April 12, 2022

Panel:       STANFILL, C.J., and MEAD, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.*

## STATE OF MAINE

v.

## JOHN D. WILLIAMS

MEAD, J.

[¶1]  On September 12, 2019, following a jury trial ending in a guilty verdict, the trial court (Cumberland County, *Mullen, J.*) entered a judgment convicting John D. Williams of murdering Somerset County Deputy Sheriff Corporal Eugene Cole and sentenced Williams to life imprisonment.  17-A M.R.S. § 201(1)(A) (2021); *State v. Williams*, 2020 ME 128, ¶¶ 1, 7, 22, 241 A.3d 835. We affirmed the judgment on appeal.  *Williams*, 2020 ME 128, ¶ 1, 241 A.3d 835.

[¶2]  Williams now appeals from the court's judgment (*Mullen, C.J.*) denying his motion for a new trial.  The motion asserted that a disciplinary report concerning a member of the law enforcement team that arrested him constituted newly discovered evidence that could have been used as

---

* Although Justice Gorman participated in the appeal, she retired before this opinion was certified.

2

impeachment evidence at his trial. *See* M.R.U. Crim. P. 33. We conclude that the court did not abuse its discretion in denying the motion and affirm the judgment.

## I. BACKGROUND

[¶3] In affirming Williams's conviction on direct appeal, we concluded that "the trial court did not err in denying Williams's motion to suppress as to his confession and [certain] other statements made [to State Police detectives]." *Williams*, 2020 ME 128, ¶ 53, 241 A.3d 835. Williams had moved to suppress those statements in their entirety on the ground that they were involuntarily made, in part because he was "fearful for his safety because he had been 'beaten and pummeled' by officers during his arrest." *Id.* ¶¶ 20, 40 (alteration omitted).

[¶4] In February 2021, Williams filed a motion for a new trial pursuant to M.R.U. Crim. P. 33 on the ground of newly discovered evidence. Asserting a violation of *Brady v. Maryland*, 373 U.S. 83 (1963),[1] Williams claimed that his right to due process was violated when the State failed to disclose before trial a disciplinary report concerning Maine State Trooper Tyler Maloon, a member of the law enforcement team that arrested him. Williams argued that the report

---

[1] In *Brady*, the United States Supreme Court established that "a due process violation occurs when the government fails to disclose evidence that is favorable to an accused and material either to guilt or to punishment." *State v. Chan*, 2020 ME 91, ¶ 15 n.8, 236 A.3d 471 (quotation marks omitted).

could have been used as impeachment evidence concerning the degree of force used against him during the arrest.

[¶5]  The report, issued by the Maine State Police Office of Professional Standards and signed by the Deputy Chief of the State Police, imposed an eight-hour suspension on Maloon upon finding: "You failed to provide timely notice, through your chain of command of a potential act of misconduct and you failed to provide proper documentation of the conduct through reports and interviews."  In responding to Williams's motion for a new trial, the State acknowledged that the referenced "potential act of misconduct" Maloon failed to initially report was another trooper striking Williams twice while handcuffing him—information known to defense counsel, the trial court, and the jury because Maloon testified to it at the motion to suppress hearing and again at trial.[2] *See Williams*, 2020 ME 128, ¶ 44, 241 A.3d 835.

[¶6]  After reviewing in camera State Police records concerning Maloon's discipline, the court denied the motion for a new trial:

> [T]he Court is left with the inescapable conclusion that a new trial
> should not be granted.  It is difficult . . . to understand how Trooper
> Maloon's discipline for violating an internal reporting process

---

[2] At oral argument, Williams acknowledged that prior to the motion to suppress hearing he was made aware of what Maloon had witnessed through two interview reports filed by a Maine State Police detective.  Williams asserts only that he was not aware that Maloon had been disciplined for failing to immediately report what he had seen.

4

within the State Police could be considered as "exculpatory or impeachment evidence" and thus relevant or admissible at trial, especially when his trial testimony was arguably favorable to [Williams].

. . . [T]he Court notes that the use of force at the time of [Williams's] arrest was specifically testified to by Trooper Maloon first at the Motion to Suppress [hearing] and then at the trial. The fact that Trooper Maloon was disciplined is not evidence that would probably change the result of [Williams's] trial. . . .

With respect to the *Brady/Giglio*[3] test, the Court finds that the fact that the trooper was disciplined was not material because there is literally *little to no possibility*, much less *probability*, that if the defense had known about this evidence the result of the trial would have been different. The Court frankly agrees with the State when it argues that it makes no sense for [Williams] to attempt to impeach the one law enforcement witness who testified at trial to the use of force used against [Williams] at the time of his arrest.

. . . .

In conclusion, the Court finds no *Brady/Giglio* violation, and even assuming such a violation occurred, the Court finds no prejudice to [Williams].

[¶7]  Williams timely appealed the denial of his motion for a new trial. M.R. App. P. 2B(b)(1).

---

[3]  *Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the *Brady*] rule" (quotation marks omitted)).

## II. DISCUSSION

[¶8]  Maine Rule of Uniform Criminal Procedure 33 provides that "[t]he court on motion of the defendant may grant a new trial to the defendant if required in the interest of justice."  In general, "[m]otions for a new trial on the ground of newly discovered evidence are looked upon with disfavor, in light of the need for finality and for the preservation of the integrity of criminal judgments." *State v. Twardus*, 2013 ME 74, ¶ 29, 72 A.3d 523 (quotation marks omitted).  "[W]e review the court's findings of fact for clear error and its determination of whether [Williams] has met the necessary elements for an abuse of discretion," recognizing that "[t]he trial court determines both the weight and the credibility to be attached to the newly discovered evidence." *Id.* (quotation marks omitted); *see id.* ¶ 32.

[¶9]  Pursuant to the United States Supreme Court's holding in *Brady*, "A defendant's due process rights are violated when the prosecution withholds evidence favorable to him." *State v. Nisbet*, 2018 ME 113, ¶ 29, 191 A.3d 359 (quotation marks omitted); *see supra* n.1.  The State's obligation to produce such evidence "extend[s] to evidence that the defense could have used to impeach the prosecution's key witnesses." *United States v. Raymundí-Hernández*, 984 F.3d 127, 159 (1st Cir. 2020).

6

[¶10]   Because the newly discovered evidence asserted in Williams's Rule 33 motion resulted from an alleged *Brady* violation, his burden required him to prove, by clear and convincing evidence, three elements concerning the disciplinary report: "(1) [it was] favorable to [him] because it was exculpatory or impeaching; (2) [it was] suppressed by the State, either willfully or inadvertently; and (3) prejudice . . . ensued."  *Nisbet*, 2018 ME 113, ¶ 29, 191 A.3d 359; *see Twardus*, 2013 ME 74, ¶¶ 29, 32, 72 A.3d 523 (stating that when a *Brady* violation is alleged "[t]he defendant retains the burden of proof"). Concerning the third element,

> [e]vidence is prejudicial when it is material—that is, the nondisclosure was so serious that there is a *reasonable probability* that the suppressed evidence would have produced a different verdict.  A reasonable probability exists when the likelihood of a different result is great enough to undermine confidence in the outcome of the trial.

*Nisbet*, 2018 ME 113, ¶ 29, 191 A.3d 359 (quotation marks omitted).

[¶11]   We conclude that the trial court was justified in finding that Williams failed to prove each of the three elements, and therefore no *Brady* violation occurred.  As the court noted, a central argument Williams made to the jury—that his incriminating statements to State Police detectives were not truthful, but rather resulted from his desire to avoid further physical abuse at the hands of law enforcement officers—was supported, not refuted, by

Maloon's testimony at trial that Williams had been struck by another trooper during his arrest, including once while he was handcuffed.[4] The fact that Maloon had been disciplined by the State Police for not immediately reporting what he later testified to at the motion to suppress hearing and again at trial would not have added anything to Williams's attempt to convince the jury that his confession was motivated by fear. As the court found, impeaching Maloon would have made "no sense" because it would have undermined in the eyes of the jury "the one law enforcement witness who testified at trial to the use of force used against [Williams] at the time of his arrest."[5]

[¶12] Accordingly, Williams failed to prove that the Maloon disciplinary report was "favorable to [him] because it was exculpatory or impeaching." *Nisbet*, 2018 ME 113, ¶ 29, 191 A.3d 359. Because the report was not favorable to him in the first instance, Williams also failed to show a "reasonable probability" that the report, if admitted in evidence, would have produced a different verdict at trial. *Id.* (emphasis omitted).

---

[4] Williams admitted shooting Corporal Cole; the theory of his defense was that the killing was not intentional or knowing. In support of that theory, defense counsel argued to the jury: "This was a man who was just trying to get his needs met. And you are . . . the ones who get to decide the reliability of what he told the officers." One of the things Williams told State Police detectives was that he acted to "eliminate" Corporal Cole.

[5] The court thus found it "difficult . . . to understand" how the report would have been "relevant or admissible at trial."

8

[¶13]    For these reasons, the court found that "[there was] no *Brady/Giglio* violation," emphatically declaring that "there is literally *little to no possibility*, much less *probability*, that if the defense had known about this evidence the result of the trial would have been different."  That determination was not an abuse of the court's discretion on this record, and we therefore affirm the court's judgment denying Williams's motion for a new trial.  *See Nisbet*, 2018 ME 113, ¶ 28, 191 A.3d 359; *Twardus*, 2013 ME 74, ¶ 32, 72 A.3d 523.

The entry is:

Judgment affirmed.

Verne E. Paradie, Jr., Esq. (orally), Lewiston, for appellant John D. Williams

Aaron M. Frey, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2018-2275
For Clerk Reference Only