*Marquez v. Barrone*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> RICHARD J. SULLIVAN,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

JULIAN MARQUEZ,

> *Petitioner-Appellant*,

> v.                                                                      No. 22-2855

C BARRONE,

> *Respondent-Appellee.*

_____

For Petitioner-Appellant:     RANDA D. MAHER, Maher & Pittell LLP, Great Neck, NY.

For Respondent-Appellee:     JO ANNE SULIK, Senior Assistant State's Attorney, Office of the Chief State's Attorney, Rocky Hill, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Sarala V. Nagala, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's September 27, 2022 judgment is **AFFIRMED**.

Petitioner Julian Marquez appeals from a judgment of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his conviction in Connecticut state court for felony murder, two counts of first-degree robbery, and attempted robbery. On appeal, Marquez argues that (1) his Fourteenth Amendment right to due process was violated when the state trial court denied his motion to suppress and permitted the introduction of pretrial and in-court identifications made by two eyewitnesses, and (2) his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated when the prosecution failed to disclose an alleged cooperation agreement between the prosecutors and a cooperating witness and failed to correct the witness's allegedly perjured

testimony on this point.  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

A federal court may issue a writ of habeas corpus under section 2254 only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding."  28 U.S.C. § 2254(d).  We review the denial of a section 2254 petition *de novo*.  *Scrimo v. Lee*, 935 F.3d 103, 111 (2d Cir. 2019).

## I.      Identification Claim

The Connecticut Supreme Court affirmed Marquez's conviction and rejected his claim that the state trial court had erroneously denied his motion to suppress the pretrial and in-court identifications made by two eyewitnesses. Marquez argues that this ruling was contrary to, or involved an unreasonable application of, clearly established federal law.  In particular, Marquez contends that the photographic identification procedures were unduly and unnecessarily suggestive, and that section 2254 relief is accordingly warranted, because (1) the photos were presented simultaneously instead of sequentially, (2) the officer

administering the array did not utilize a "double-blind" technique whereby neither the witness nor the detective presenting the photographic array knew who the suspect was, (3) Marquez's photograph was the only one with a white ruler in it and had a brighter background than the others in the array, and (4) the detective showing the array made a confirmatory remark after one of the eyewitnesses identified Marquez.   We disagree.

In general terms, an out-of-court identification may not be admitted at trial if the identification procedure used by law enforcement was (1) unduly and unnecessarily suggestive, and (2) so unreliable that there is a very substantial likelihood of misidentification.   *See Manson v. Brathwaite*, 432 U.S. 98, 114–17 (1977); *Simmons v. United States*, 390 U.S. 377, 384–85 (1968).   The Connecticut Supreme Court expressly acknowledged both *Manson* and *Simmons*, *see State v. Marquez*, 291 Conn. 122, 141–42 (2009), before concluding that the identification procedures, while "not ideal, . . . satisfy the requirements of due process," *id.* at 165.

Although Marquez disagrees with the Connecticut Supreme Court's conclusion, he identifies no authority from the United States Supreme Court holding – or even suggesting – that an eyewitness identification procedure may

4

not include a simultaneous presentation of photographs in the form of an array, as was done here. Nor does he cite any Supreme Court precedent that requires law enforcement officers to employ a double-blind procedure.[1]

With respect to the detective's post-identification comments confirming the accuracy of the witness's identification, the Connecticut Supreme Court concluded that the comment "may affect the weight or even the admissibility of a subsequent *in-court* identification, [but] it is irrelevant to our analysis regarding the suggestiveness of the [out-of-court] procedure itself." *Id*. at 164. Marquez insists that this statement is inconsistent with clearly established federal law and that a post-identification confirmatory comment from a law enforcement officer to an eyewitness is relevant to the admissibility of *both* the original pretrial identification and the later in-court identification. But the only authorities Marquez cites for this proposition are opinions by the Second Circuit – not the United States Supreme Court – which by definition cannot constitute "clearly established [f]ederal law" under section 2254. 28 U.S.C. § 2254 (defining "clearly established [f]ederal law" as that "determined by the Supreme Court of the United

---

[1] Marquez's counsel essentially conceded at oral argument that no Supreme Court authority prohibits the identification procedures employed here. Oral Argument Audio Recording at 06:40-06:45, *Marquez v. Barrone*, No. 22-2855 (2d Cir.) ("I would argue that there is not clearly established Supreme Court law that I can point to . . . .").

States"); *see also Williams v. Taylor*, 529 U.S. 362, 381 (2000) ("If [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the [section 2254] bar."). Absent contrary United States Supreme Court authority, we cannot conclude that the Connecticut Supreme Court's decision is contrary to federal law.

## II. *Brady* Claim

Marquez next argues that the Connecticut Supreme Court unreasonably applied clearly established federal law when it determined that the prosecution's failure to disclose an alleged cooperation agreement between the prosecution and a witness, Edwin Soler – and the prosecution's subsequent failure to correct Soler's purportedly perjured testimony on this point – did not constitute a *Brady* violation. Again, we disagree.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473

6

U.S. 667, 682 (1985). Undisclosed impeachment evidence concerning a government witness may be material if the witness in question supplied the only evidence linking the defendant to the crime. *See Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

Marquez argues that Soler's testimony was material because it "fleshed out the State's case and provided jurors with a full story," as "only Soler was uniquely situated to" testify about the planning and lead-up to the crime, as well as what happened after. Marquez Br. at 59. But given the weight of the other evidence against Marquez, the Connecticut Supreme Court's conclusion that Soler's testimony was not a but-for cause of Marquez's conviction was a reasonable application of federal law. As noted by the Connecticut Supreme Court, the proof of Marquez's guilt was overwhelming and included: (1) Marquez's own statement to the police that he was present during the incident that caused the victim's death, and that he had, at some point, held the gun used in the murder; (2) Valle's and Clement's identifications of Marquez – not Soler – as the gunman; and (3) testimony from Marquez's fellow inmate, David Williams, who stated that Marquez confessed to shooting the victim and asked Williams to help him frame Soler by drafting a letter that repeated the events of the murder but reversed the

7

roles of Marquez and Soler. *See Marquez v. Comm'r of Corr.*, 330 Conn. 575, 595–99 (2019). Notably, whether Marquez was the person who shot the victim was not dispositive of his felony murder conviction – the trial court instructed the jury that "[a] person is guilty of [felony] murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery and in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other th[a]n one of the participants," App'x 1877–78. Weighing the evidence against Marquez in isolation from Soler's testimony, we cannot conclude that the Connecticut Supreme Court unreasonably applied clearly established federal law when it concluded that "Soler's testimony served only to corroborate [the] independent testimony" already in the record. *Marquez*, 330 Conn. at 599.

The record also supports the Connecticut Supreme Court's conclusion that the additional impeachment material would have been largely cumulative. As the court noted, Soler admitted to hoping that his attorney could do "whatever she c[ould] do" to get him a deal with the prosecution, *id.* (alterations and internal quotation marks omitted), which prompted Marquez's lawyer to argue in summation that Soler "likely testified as a means to have the felony murder

8

charge, and its mandatory minimum sentence, dropped in exchange for testimony favorable to the state," *id.* at 600. Defense counsel also vigorously cross-examined Soler on his belated efforts to speak with police, his prior drug use, his participation in the armed robbery, and the fact that Soler's nickname was the Spanish word for monster.

Lastly, Marquez asserts that the Connecticut Supreme Court unreasonably applied federal law when it concluded that Soler's purportedly perjured testimony concerning his agreement with the prosecution was immaterial. Marquez Br. at 60 (citing *Napue v. Illinois*, 360 U.S. 264 (1959)). Again, we disagree. The Connecticut Supreme Court correctly acknowledged that, in cases involving perjured testimony, "reversal is virtually automatic . . . unless the state's case is so overwhelming that there is no reasonable likelihood that the false testimony could have affected the judgment of the jury." *Marquez*, 330 Conn. at 594 (internal quotation marks and emphasis omitted). Nevertheless, after reviewing the record before it, the court still concluded that, given the overwhelming evidence against Marquez, "Soler's allegedly false testimony and the prosecutor's failure to correct it were immaterial under *Brady*." *Id.* at 603. Reviewing the record *de novo*, including the ample evidence linking Marquez to the crimes, we cannot say

9

that the Connecticut Supreme Court's materiality determination involved an unreasonable application of clearly established federal law.  The district court therefore did not err in denying Marquez's petition.

We have considered Marquez's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court